A. J. CONNELLY, *et al.*, v. G. W. WOODS.

WRONGFUL ATTACHMENT; *Liability for Damages.* C. commenced an action on a promissory note against W. before H., a justice of the peace. The note was not due, and showed upon its face that it was not due. C., however, filed an affidavit for an order of attachment, in which affidavit he stated, among other things, that the note *was due;* and the justice of the peace issued the order of attachment. Everything was regular, except that the note was not due. *Held,* That the justice of the peace was not liable for damages resulting from the issuance of the order of attachment, but that the plaintiff C. was.

*Error from Johnson District Court.*

THE opinion states the nature of the action, and the facts. At the June Term, 1883, plaintiff *Woods* recovered a judgment for $96 damages against defendants *Connelly* and *Hunter,* who bring it here for review.

*Gill & Parker,* for plaintiffs in error.

*A. Smith Devenney,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: The facts of this case, stated briefly, are substantially as follows: On December 4, 1882, A. J. Connelly brought an action before G. C. Hunter, a justice of the peace of Aubrey township, Johnson county, Kansas, against G. W. Woods, on a promissory note for $100, with interest, dated September 1, 1882, and payable six months after date. Connelly filed this promissory note with the justice of the peace as his bill of particulars. On the same day, to wit, December 4, 1882, Connelly filed an affidavit with the justice of the peace for an order of attachment, in which affidavit he stated, among other things, that said note *was due;* and at the same time an attachment bond or undertaking was given, with A. M. Young as surety; and at the same time a summons and an order of attachment were issued by the justice, and placed in the hands of Charles Chrisman, a constable of Aubrey township, in said county, who duly served the same

on the same day. The summons was served by leaving a copy thereof at the usual place of residence of Woods, and service of summons was also made at a subsequent time by publication. The order of attachment was also duly served on December 4, 1882, by attaching a horse belonging to Woods. At the time this action was commenced, Woods was temporarily absent from the state of Kansas, and was in Texas, but he returned home in a few days afterward, and before anything further was done in the action. The return day of the foregoing writs, and the day set for the trial of the case, was the 9th day of December, 1882, but on that day the case was continued to January 13, 1883. On December 11, 1882, an order was made by the justice of the peace directing the constable to dispose of said property as upon execution, and on December 23, 1882, the constable sold the same to one T. W. Todd, for $290, and Todd immediately took the horse into the state of Missouri, where he has ever since been. On January 13, 1883, the justice of the peace rendered judgment by default in favor of Connelly, and against Woods, for the sum of $103.65, and costs, taxed at $50.90.

Woods never made any appearance in the case, although he had knowledge of the same prior to the rendition of the judgment therein. The proceeds of the sale of the horse were applied in payment of this judgment, and also in payment of two other judgments which had also been rendered by the same justice of the peace against Woods and in favor of other parties about that time. On January 17, 1883, Woods brought this present action in the district court of Johnson county against Connelly, the plaintiff in said attachment action, and A. M. Young, the surety on the attachment bond, and G. C. Hunter, the justice of the peace, and Charles Chrisman, the constable, charging them, among other things, with having taken the said horse to the state of Missouri and selling him and applying the proceeds thereof to their own use. All the defendants answered to the plaintiff's petition by filing general denials, and Chrisman also set up a justifi-

cation under the order of attachment. The plaintiff replied, setting up new facts. A trial was had before the court and a jury, and the jury found a general verdict in favor of Woods and against the defendants Connelly and Hunter, and assessed the plaintiff's damages at $96. The jury also found specially that there was no debt due from Woods to Connelly at the time the suit was commenced by Connelly against Woods in the justice's court, and also found specially that it was not within the power of Chrisman at any time after he sold the horse to Todd to deliver the same to Woods. Upon these findings the court below rendered judgment in favor of Woods and against Connelly and Hunter for the sum of $96 and costs of suit, and the case was dismissed as to Chrisman and Young. Connelly and Hunter, as plaintiffs in error, now bring the case to this court, and ask that said judgment of the district court be reversed.

From the foregoing facts, we think it will appear that one of the main questions involved in this case, if not the main question, is whether the justice of the peace, Hunter, had any jurisdiction to issue the said order of attachment; for if the justice had such jurisdiction, then the plaintiff below, Woods, has no right to recover as against the justice, and possibly not as against any other person; but if the justice did not have any such jurisdiction, then we think that Woods certainly has a right to maintain this action, and to recover the full amount which he did recover. It would seem that the horse was worth about $400, and that the jury, under the evidence and *the instructions* of the court below, deducted from that amount an amount equal to the three judgments which had been previously rendered by the justice of the peace against Woods and in favor of Connelly and others, and rendered their verdict for the excess of the value of the horse over and above the amount of the said three judgments.

That the promissory note sued on in the justice's court was not due when the action in the justice's court was commenced, there can be no doubt. It was not due when the

action in the justice's court was commenced; it was not due on the return day of the summons and order of attachment; it was not due when the justice of the peace ordered the horse to be sold; it was not due when the horse was in fact sold; it was not due when the justice rendered judgment in favor of Connelly and against Woods; it was not due when the proceeds of the sale of the horse were paid on said three judgments; and it was not due when this present action was commenced. The promissory note itself shows that it was not due, and there was nothing presented in either the justice's court or in the district court showing that it was due, except the said affidavit of Connelly for the order of attachment; and that affidavit states that it was due, in the following words, to wit: "That said claim is just, is due, and is wholly unpaid; and that said affiant believes that said plaintiff [Connelly] ought to recover of said defendant [Woods] the said sum," etc.

The main question in the district court, as in this court, was whether the order of attachment was valid, or not; and this question, as it was thought by the district court, depended upon this other question, whether the said promissory note was due, or not, when the order of attachment was issued.

Now there is nothing in the entire litigation from beginning to end, except Connelly's affidavit, tending to show that the note was due when the order of attachment was issued; but on the contrary, everything except the said affidavit tended to show that the note was not then due, and the jury made a special finding, stating that the note was not then due. The case must therefore be decided upon the theory that the note was not due when the said order of attachment was issued; and upon this theory, was the order of attachment void, or valid? There is no provision in the justices code authorizing an order of attachment to be issued upon a claim before it is due, and there is no provision in the code of civil procedure, or elsewhere, authorizing an order of attachment to be issued upon a claim before it is due, upon the grounds upon which the order of attachment was issued in the present case.

In the present case, the grounds for the order of attachment, as set forth in Connelly's affidavit, are stated in the following language, to wit: "That said defendant [Woods] has absconded with intent to defraud his creditors, and so conceals himself that a summons cannot be served upon him." Section 230 of the civil code authorizes an order of attachment to be issued in certain cases upon a claim before it is due, but it does not authorize an order of attachment to be issued in any such case as this, or upon any such grounds as those upon which the order of attachment was issued in the present case; and whether said §230 of the civil code has any application to cases brought before a justice of the peace, is also at least doubtful. (See reasoning in the case of *Kerner v. Petigo*, 25 Kas. 652, 657.)

The judgment in the present case was rendered against both the justice of the peace and the plaintiff in the attachment proceedings. Was the justice liable? The jurisdictional facts upon which a justice of the peace may issue an order of attachment are the following: (1) An action must be commenced at the time or before the order of attachment is issued; (2) an affidavit for the attachment must be filed; (3) an attachment bond or undertaking must be given. (Sections 28 and 29 of the Justices Code.) Now all these things were done in the present case, but it is claimed on the part of Woods that the action was wrongfully commenced on a claim *before it was due*, and that the affidavit for the attachment, although sufficient upon its face, *was not true*, for the reason that it stated that the claim *was due*, when in truth and in fact *it was not due*. These are the only grounds upon which it is claimed that the justice of the peace did not have jurisdiction to issue the order of attachment, or that he wrongfully issued the same. Are these grounds sufficient to render the justice liable? We would hardly think they are. The affidavit for the order of attachment was sufficient on its face; and the affidavit is the principal thing upon which a justice of the peace issues the order of attachment, although of course, before issuing the same he should see that an action has been commenced in

which an order of attachment is allowable, and also see that an attachment undertaking has been executed and filed. The justice of the peace is not bound, however, to scrutinize closely the bill of particulars filed by the plaintiff in the action to see that it unquestionably states a cause of action; for in many cases where the plaintiff's pleading is defective, the pleading may be amended and the attachment sustained; and generally the justice of the peace has a right to suppose that the affidavit is true, if it is possible in the nature of things and under the circumstances of the case to believe it to be true.

Now, notwithstanding the fact that the note upon which Connelly commenced his action was dated September 1, 1882, and purported to be payable six months after date, yet the justice might have supposed from the affidavit, either that the date of the note was wrong, or that the word "six" should have been "one" or "two," or that the word "months" should have been "days" or "weeks," or that some subsequent or collateral contract was entered into between the parties whereby, and under the circumstances of the case, the note had become due prior to the commencement of the action. In other words, we think the justice of the peace had a right to rely upon the truthfulness of the affidavit, and was not bound to know, at his peril, that the affidavit was not true, and that the note was not in fact due when he issued the order of attachment. In other words, so far as the justice of the peace is concerned, he had jurisdiction to issue the order of attachment. But this jurisdiction, we think, was merely the jurisdiction of a ministerial officer, and not that of a judicial officer, and therefore, that while such jurisdiction will protect the justice, it will not protect any other person than the justice. It will not protect or exculpate Connelly. He must have known that the note was not due when he filed the affidavit for the order of attachment; and therefore we think he must be held to be liable for all that resulted from the wrongful procurement of the order of attachment. As to him, the justice of the peace

was without jurisdiction. Besides, no person should be allowed to commit such a wrong with impunity.

We have not been referred to any authority directly in point; but some of the authorities referred to have some analogy to this case. (See Drake on Attachment, ch. 5, and cases cited; *Spice v. Steinbuck*, 14 Ohio St. 213; *Gillett v. Thiebold*, 9 Kas. 427; *Hannum v. Norris*, 21 id. 114; *Hauss v. Kohlar*, 25 id. 640; *Ivy v. Barnhartt*, 10 Mo. 151.) This last case is cited by counsel for plaintiffs in error, but we do not think that it has much application to the present case, for the reason that the case was decided upon the technical rules of the common law, and not under the more liberal rules of the code practice. The decision was that "an action of *trespass* will not lie against a party for suing out an attachment, although the debt on which the suit was founded was not due at the commencement of the suit;" and the court, in its opinion, uses the following among other language:

"It is difficult to imagine the principle upon which an attempt is made to support an action of trespass on the facts of this case. The rule is stated in Chitty, 136, whenever an injury to a person is effected by regular process of a court of competent jurisdiction, case is the proper remedy; trespass is not sustainable."

In this state, and under the more reasonable and liberal rules of the civil code, a party may simply state the facts of his case, and if he has a right to recover on such facts, he may recover in the action, whether the action is such as would at common law be denominated an action of trespass, or an action on the case, or some other kind of action. There, has been no question raised in this court with regard to the sufficiency of the pleadings in the court below, and hence the decision of this court will be made upon the facts of the case, and not upon any technical or arbitrary rules of pleading. The plaintiff, Woods, did not set forth the facts of his case very fully in his petition, though he did in his reply; and the defendants, Connelly and Hunter, did not set forth the facts of their defenses at all, but simply filed general denials.

The case, however, was tried by the court below as though the pleadings were entirely sufficient, and we shall decide the case in the same way. We shall decide the case upon the real facts of the case, as shown by the evidence and the findings of the jury; and, deciding the case in this manner, we think the justice of the peace should be held to be not liable, and the plaintiff in the action before the justice of the peace should be held to be liable. Therefore, as to the justice of the peace, the judgment of the court below will be reversed; and as to Connelly, it will be affirmed.

All the Justices concurring.