(Decided 28th June, 1878.)

---

Andrew Knell and Benjamin B. Knell vs. Alexander M. Briscoe.

*Action against a Justice of the Peace for malicious rendition of a judgment—Distinction between malicious Conduct and Error of judgment—Relevancy of Evidence offered to show malice—Appeal bond—Legal sufficiency of Evidence.*

A justice of the peace or any other judicial officer is liable in damages at the suit of the party injured, for malicious, fraudulent and corrupt conduct in

Knell *vs.* Briscoe.

the discharge of his judicial duties; but not for error of judgment, or mistake honestly made.

The plaintiffs sued the defendant, a justice of the peace of the City of Baltimore, to recover damages for acting maliciously, fraudulently and corruptly in rendering a certain judgment against the plaintiffs, and in refusing to receive and approve an appeal bond in the case in the penalty of $200, and in demanding a bond in the penalty of $800. At the trial one of the plaintiffs testified that in a conversation he had with the defendant more than a year before the transaction in question, the latter in speaking of some bond in another case which witness refused to sign, said to him, "I will get even with you and you know I can," and from that time he and the defendant had not been on friendly terms, nor had witness ever had any business with the defendant since, until the trial of this case. In what character of case the bond spoken of was to have been given, or in what precise connection this expression was used, did not clearly appear. HELD:

That the Court below was right in refusing to allow such an expression used so long before to be used by the jury as evidence of a malicious threat or design on the part of the defendant to act corruptly or fraudulently in rendering the judgment complained of.

The amount of the penalty of an appeal bond in a proceeding to dispossess a tenant holding over in the City of Baltimore has not been prescribed by statute, and the fixing of that penalty and the approval of the sureties offered are judicial and not ministerial acts.

The *legal sufficiency* of testimony is a question of law for the Court.

Whenever the testimony adduced by a plaintiff is so light and inconclusive that no rational, well constructed mind can infer from it the fact which it is offered to establish, it is the duty of the Court, when applied to for that purpose, to instruct the jury that there is no evidence before them to warrant their finding the fact thus attempted to be proved.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the close of the plaintiff's evidence, the Court (DOBBIN, J.,) required the defendant to submit the following prayer.

1. The defendant prays the Court to instruct the jury that there is no evidence legally sufficient to entitle the plaintiffs to recover.

This prayer was granted by the Court. The defendant excepted.

The jury rendered a verdict for the defendant and judgment was entered accordingly. The plaintiffs appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY and ROBINSON, J.

*William Reynolds,* for the appellants.

*John Q. A. Jones,* for the appellee.

MILLER, J., delivered the opinion of the Court.

The appellants sued the appellee, a justice of the peace for the City of Baltimore, to recover damages for acting "maliciously, fraudulently and corruptly, and with the willful and corrupt desire to injure and oppress the plaintiffs, and in conscious, willful and flagrant disregard of his duties as such justice of the peace," in rendering a certain judgment against the plaintiffs, and in refusing to receive and approve an appeal bond in the case in the penalty of $200, and in demanding a bond in the penalty of $800. The defendant pleaded not guilty, and at the trial, after the evidence on the part of the plaintiffs was closed, the Court required the defendant's counsel to submit, and granted, an instruction to the jury that there is no evidence legally sufficient to entitle the plaintiffs to recover. To this ruling the plaintiffs excepted, and this was the only exception taken in the case.

It is well settled that a justice of the peace, or any other judicial officer, is liable in damages at the suit of the party injured for malicious, fraudulent and corrupt conduct in the discharge of his judicial duties, but not for error of

judgment or mistake honestly made. *Benard vs. Hoff-man*, 18 *Md.*, 479; *Friend vs. Hamill*, 34 *Md.*, 304. In this case it appears that the plaintiffs on the 16th of June, 1876, had rented a carpenter's shop in the City of Baltimore, from Lanahan and Bradley, which the lessors afterwards on the 12th of September, 1876, assigned to one Cowan. On the 19th of October, 1876, a notice signed by Lanahan, Bradley and Cowan was served on the plaintiffs to quit at the end of the following month of their tenancy.

This notice appears to have been miscarried for some reason, and on the 14th of December, 1876, another notice signed by Cowan only was served on them to quit the premises at the end of the month of their tenancy, which should expire next after thirty days from the date thereof. The plaintiffs having refused to obey this notice, a summons was issued against them on the 20th of January, 1877, by the defendant as a justice of the peace, at the suit of Cowan, reciting this notice and requiring them to appear before him on the 26th of January, 1877, and show cause why restitution of the premises should not be forthwith delivered to Cowan. This summons was in due form and was issued under section 890 of Article 4 of the Code of Public Local Laws, which gives to a single justice in the City of Baltimore jurisdiction in such cases. On the day named the Knells appeared before the justice and he by consent of parties postponed the case until the next day, Saturday, the 27th of January, 1877. On that day *and after trial had* the justice awarded judgment in favor of Cowan for restitution of the premises, and that the defendants, the Knells, pay one cent damages and $19.27 costs, and on the same day issued a warrant of restitution upon this judgment directed to the sheriff of Baltimore City, under which the sheriff on the following Monday put Cowan in possession of the premises. On the 6th of April, 1877, the Knells took an appeal without bond from this judgment

to the City Court, where it was reversed and judgment entered for the appellants on the 23rd of May following.

This was the action of the justice, and now what evidence is there that he acted fraudulently and corruptly in rendering this judgment? He undoubtedly held the opinion which was entertained by these landlords when they gave the notices, and has been entertained by others and mooted elsewhere than before justices of the peace, that in all cases of renting of tenements in Baltimore City for a definite term, where the rent is payable monthly, the tenancy may be ended at any time by a month's notice, and that in such cases the payment of rent and not the length of time for which the premises were rented governs in this particular. In this he may have been mistaken, but surely the holding of that opinion is no evidence of fraudulent or corrupt conduct. His refusal to receive evidence that the plaintiffs had rented the shop for a term of one year from the 15th of June, 1876, at seventy dollars, and had paid ten dollars in advance for insurance on the premises, and that the balance was payable monthly at five dollars per month, and his refusal to receive it after his attention had been called to the letter of the plaintiff's counsel, in which it was stated that the Knells were yearly and not monthly tenants, and authorities referred to in support of that position, merely shows persistence in his own opinion in opposition to that of an attorney at law, and shows nothing else. The testimony of Lanahan that he signed the first notice because the defendant said to him " you will have to sign it because it will be necessary to get Knell out," shows nothing more than that he then thought the signatures of Lanahan and Bradley, the original lessors were necessary to the effectiveness of the notice which Cowan wished to send. The object of the notice was to get the Knells out, and it was probably prepared in his office or he was consulted about it, and the advice given is similar to that usually given by magistrates, when they

are called upon to prepare papers necessary to judicial action or to act upon them. There is not a particle of proof that the defendant instigated this proceeding for the eviction of the plaintiffs, or interfered in the matter in any way whatever, until he was called upon by the landlord to act in his official character. The witness Benjamin K. Knell testified that in a conversation he had with the defendant in January, 1876, the latter, in speaking of some bond in another case which witness refused to sign, said to him " I will get even with you and you know I can," and that from that time he and the defendant had not been on friendly terms, nor had witness ever had any business with the defendant since, until the trial of this case. In what character of case the bond spoken of was to have been given or in what precise connection this expression was used does not clearly appear, and we are of opinion the Court was quite right in refusing to allow such an expression, used more than a year before these transactions, to be used by the jury as evidence of a malicious threat or design on the part of the defendant to act corruptly or fraudulently in rendering this judgment. Besides, the same witness on cross-examination admitted that he went to the defendant's office on the 20th of November, 1876, to see about the first notice to quit, and while there he asked the defendant whether he could appeal from a judgment, which another magistrate had rendered against him a few days before, and defendant told him he could appeal. This not only shows an entire absence of malice, on the part of the defendant towards the witness, but a friendly disposition to aid him, by giving the information and advice he needed.

We must now consider the testimony in relation to the penalty of the appeal bond. It appears that after the judgment was rendered, the plaintiffs said they wished to appeal, and the defendant thereupon said they must give a bond in the sum of $800, and offered to accept Andrew

Knell, Sr., who was then present, as surety, but he declined to go on a bond for so large an amount. Witness then assured the defendant it would be impossible for him to give such a bond, and after going away and consulting his counsel, came back and told him his counsel said the bond demanded was excessive, and that one in the penalty of from $150 to $200 would be ample, that defendant then turned to a member of the bar who was in his office and had acted as counsel for Cowan at the trial, and said, " how is that?" and the attorney in reply made a remark, at which they both laughed. We have not given the exact language used, but the amount of it is that Cowan's attorney made a jocular but not disrespectful expression as to the law stated by Knell's counsel, which caused merriment. The defendant then showed witness sec. 5, of Art. 53 of the Code, and witness insisted his case was not like the one there referred to, but the defendant refused to accept a bond for less than $800, and persisted in this refusal after witness had filled up and offered to execute a bond in the penalty of $200. In the section of the Code referred to by the justice the penalty of the bond there required is not less than $800. He was mistaken in supposing this provision was applicable to the case before him, but as we have said in reference to his opinion upon another question, his mistaken opinion, however much persisted in, is not to be regarded as evidence either of malice, fraud, or corruption. It has been argued that in fixing the penalty of the appeal bond he had to perform a ministerial duty only, and that the law gave him no discretion in the matter, and he is therefore liable to the extent of actual damage without proof of malice or corruption. But the Acts of Assembly and sections of the Code referred to in support of this position do not sustain it. The amount of the penalty of an appeal bond in a case like this has not been prescribed by statute, and the fixing of that penalty and the approval of the sureties offered are clearly judicial

and not ministerial acts. It was also proved by the same witness, Knell, that after the eviction of the plaintiffs under this judgment, he met the defendant one day in the street in front of his office, asked him why he had decided another case against him when there was no evidence for the plaintiff and he had testified in his own behalf, and that defendant thereupon told witness he would not believe him, that he was a perjurer, and asked him to step into his office, but witness declined to do so. But the plaintiffs themselves gave by another witness the defendant's version of this matter, and this witness says the defendant told him he had a conversation with Knell about a case he had decided against him since the eviction, in which Knell used *abusive language*, and he said he wished Knell's remarks had been made in his office, for if they had been he would have placed him where he would not have been very easily released, and kept him there as long as possible. This was offered by the plaintiffs themselves, and it shows that Knell used abusive language to the justice, and the latter expressed his regret that it had not been used in his office so that the speaker could have been punished therefor, and the testimony of Knell himself shows that when he asked the justice an improper question as to his decision of a case before him, in which Knell had been a witness for himself, the justice expressed in very plain terms his opinion of the questioner's truthfulness and veracity.

We have now referred to and noticed all the testimony in the cause bearing upon the question raised by the exception, and we are well satisfied a jury could not have found from it that the defendant was guilty of corrupt, fraudulent and malicious disregard of duty in rendering this judgment or in fixing the penalty of the appeal bond, without indulging in wild conjecture or loose speculation. The Court was, therefore, right in instructing them that there was no evidence in the case *legally sufficient* to entitle

the plaintiffs to recover. In reaching this conclusion we have not disregarded or been unmindful of the well established principle so earnestly pressed upon our attention by the appellants' counsel, that in all cases where the inquiry turns upon intention and motive, and where fraud, corruption and the like constitute the gist of the action, any fact, however slight, if at all relevant to the issue, is admissible in evidence. But the question here is not as to the admissibility, but the *legal sufficiency* of the testimony offered, and that is a question of law for the Court in this as in other cases. In other words, to use again the language of the Court in *Cole vs. Hebb*, 7 *G. & J.*, 29, so often cited : " wherever the testimony adduced by a plaintiff is so light and inconclusive that no rational well-constructed mind can infer from it the fact which it is offered to establish, it is the duty of the Court, when applied to for that purpose, to instruct the jury that there is no evidence before them to warrant their finding the fact thus attempted to be proved." Such in our opinion is the character of the evidence adduced by the plaintiffs in this action, and it follows that the judgment appealed from must be affirmed.

*Judgment affirmed.*

(Decided 28th June, 1878.)