## YASELLI v. GOFF et al.

(Circuit Court of Appeals, Second Circuit. April 5, 1926.)

No. 248.

**1. Justices of the peace ⬅⬆27.**

Generally, a justice of the peace, acting within his jurisdiction, is not civilly liable, even though he acts corruptly or maliciously.

**2. Officers ⬅⬆116—Failure of public officer to perform duty is injury to public, to be redressed by public prosecution, and not by private person, conceiving himself specially injured.**

Failure of public officer to perform duty imposed on him as duty to public is regarded as injury to public, and not as one to individual, and is to be redressed in some form of public prosecution, and not by private person, conceiving himself specially injured.

**3. District and prosecuting attorneys ⬅⬆10— United States attorney is exempt from liability because of what he says and does in discharge of duties of office.**

United States attorney, if not a judicial officer, is at least a quasi judicial officer, of the government, and exempt from liability for what he says and does in discharge of duties.

**4. Attorney General ⬅⬆8—Special assistant to Attorney General of United States is not liable civilly, if he acted maliciously in discharge of his official duties.**

Special assistant to Attorney General of United States, appointed for specific purpose of assisting in investigation and prosecution of

alleged violation of laws, is not civilly liable, if in the discharge of his official duties he acted maliciously.

**5. Malicious prosecution ⚖=42—Assistant to Attorney General is immune from suit for malicious prosecution.**

Special assistant to Attorney General of United States, in performance of duties imposed by law, is immune from civil action for malicious prosecution, based on indictment and prosecution, although resulting in verdict of not guilty rendered by jury.

**6. Malicious prosecution ⚖=42—Assistant to Attorney General is immune from liability for having conspired to be appointed prosecutor.**

Special assistant to Attorney General of United States is immune from a civil action for malicious prosecution, for having willfully and maliciously conspired to get himself appointed as prosecutor, in order that he might willfully and maliciously indict person he sought to punish.

In Error to the District Court of the United States for the Southern District of New York.

Action for malicious prosecution by E. Paul Yaselli against Guy D. Goff and others. Judgment dismissing the complaint (8 F. [2d] 161), and plaintiff brings error. Affirmed.

Ewing, Alley & Voorhees and S. Lawrence Miller, all of New York City (S. Lawrence Miller, of New York City, of counsel), for plaintiff in error.

Lee, Aron & Wise, of New York City (J. Harlin O'Connell and Harold G. Aron, both of New York City, of counsel), for defendants in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. This writ of error is brought to review a judgment dismissing a complaint in an action for malicious prosecution.

The action was commenced against the defendant in the Supreme Court for the county of New York on April 21, 1922. The case was removed to the United States District Court for the Southern District of New York.

The plaintiff was Assistant United States Attorney for the Southern District of New York from October, 1914, to May, 1920, and from the date last named to 1921 was a Special Assistant United States Attorney for the same district. The defendant in 1921 was Commissioner of the United States Shipping Board, and prior thereto, and for some time thereafter, was chief counsel of the United States Shipping Board and Emergency Fleet Corporation at Washington, and on December 2, 1920, he was appointed a Special Assistant to the Attorney General of the United States and entered upon the performance of his duties as such.

In his complaint the plaintiff alleges that during all the times mentioned therein he was also president of the Italian Star Line, Inc., a corporation organized for the purpose of carrying on a general steamship business. The complaint states that on February 28, 1921, the defendant Goff, with certain other defendants, not now before this court, complained of the plaintiff before the grand jury in the United States District Court for the Southern District of New York, and falsely, maliciously, and without any reasonable or probable cause whatever charged plaintiff with having unlawfully, willfully, knowingly, corruptly, and feloniously combined, conspired, confederated, and agreed together with other parties named, together with the Italian Star Line, Inc., and divers other persons, to defraud the United States of America in connection with the purchase of steamship Liberty Land, by the Italian Star Line, Inc., from the United States Shipping Board, which said charge so made by said defendants was wholly false and untrue, as they, the said defendants, then and there well knew.

It also states: Upon information and belief, that the defendants Goff and another, although attorneys and counselors at law, duly admitted to practice for upwards of 20 years, and although well versed in the law, and well acquainted with the rules of evidence and procedure in both civil and criminal cases, maliciously, willfully, and corruptly caused to be introduced and used before the aforesaid grand jury a great mass of false, misleading, incompetent, irrelevant, immaterial, and hearsay testimony and evidence respecting and regarding the aforesaid alleged charge then pending before the said grand jury, and thus unjustly, unfairly, and improperly influenced and poisoned the minds of the said grand jury against plaintiff and others. That defendant Goff and others named falsely and maliciously, and without any reasonable or probable cause, procured the said grand jury to find and present to the court an indictment against plaintiff and others for said alleged conspiracy to defraud the United States of America as above mentioned. That the defendant Goff and others named falsely and maliciously, and without any reasonable or probable cause, caused plaintiff to be taken in custody and brought before a judge of said court, and to be then and there compelled to give bond to appear for trial therein. That

defendant Goff and others named falsely and maliciously, and without any reasonable or probable cause, procured plaintiff to be arraigned before said court and compelled him to plead to said indictment. That on the 6th day of December, 1921, said plaintiff appeared in the court and was duly tried upon said indictment. That after the prosecution had offered all its evidence, and rested its case, the court directed the jury to return a verdict of not guilty against plaintiff and all the other defendants, whereupon the jury rendered a verdict of not guilty against plaintiff and all other defendants, and thereupon defendant was duly acquitted and discharged. That the said indictment, charge, and prosecution, and each of them, was thereby wholly ended, determined, and terminated in favor of plaintiff. And damages in the sum of $300,000, together with the costs and disbursements of the action, are asked.

In his answer the defendant sets up that at all the times mentioned in the complaint he was acting as a special assistant to the Attorney General of the United States, and that all his proceedings were conducted by him in the due performance of his duties as such special assistant, and that he was appointed to assist in the investigation and prosecution of an alleged violation of the laws of the United States by the plaintiff.

The plaintiff thereupon filed a reply, which alleged on information and belief that prior to Goff's appointment he had conspired to prosecute the plaintiff maliciously and without cause, and as a step in furtherance of said plan confederated and agreed that defendant Goff would obtain an appointment as an assistant to the Attorney General for purposes of such prosecution, and that said defendants together would obtain the appointment of a receiver for the Italian Star Line, Inc., of which plaintiff was president, and thereby obtain inspection of papers and documents upon which to base such prosecution; that defendant Goff, in execution of said plan between himself and Conrad, who acted as his assistant and in conjunction with him in all of said matters caused it to be represented to the Department of Justice that the United States Shipping Board had evidence that the plaintiff and others had conspired to defraud the United States, which representation was false, and on the basis of such statement of alleged facts caused a request to be made to the Department of Justice for the appointment of defendant Goff as a Special Assistant Attorney General to prosecute the plaintiff and others, and that said request was made in bad faith, for the purpose of carrying out said conspiracy to prosecute plaintiff, and was not part of the duty of defendants to the United States Fleet Corporation, or to the United States Shipping Board; that, acting pursuant to said conspiracy, defendants Goff and Conrad caused a receiver to be appointed for said Italian Star Line, Inc., without cause, and upon false representations, and caused an assistant of said Goff and Conrad to be appointed receiver, and caused said receiver to seize and withhold, without right or color of right, personal papers, records, and files of the plaintiff, and known by said defendants and by the receiver to belong to him personally, and not to the corporation, and to permit defendants to inspect all of said papers, records, and files of the plaintiff for the purpose of said contemplated criminal prosecution, and that, although none of said papers, records, or files or other information disclosed any evidence of the commission of any crime by the plaintiff, defendants nevertheless continued said conspiracy and persisted in said purpose to have the plaintiff criminally prosecuted; that defendants Goff and Conrad bore malice to the plaintiff because of plaintiff's opposition to their efforts for the appointment of a receiver for Italian Star Line, Inc., and because of plaintiff's complaints concerning said Goff's and Conrad's actions in said matter, made to their superiors, and because of charges made by plaintiff that their conduct of the matter was not in good faith and was improper and unjust, and defendants Goff and Conrad each separately thereupon threatened to have the plaintiff put in jail, and all subsequent acts of the defendants described in the complaint were inspired by and were the result of such malice and ill will toward the plaintiff, and in execution of such threats and conspiracy, and were not done in discharge of, or as part of, any duty owed to the United States as an assistant to the Attorney General or otherwise, and that the obtaining of said appointment as assistant to the Attorney General by defendant Goff was a step taken pursuant to said conspiracy to accomplish the ends thereof, and for the purpose of using such appointment as a shield and cloak to protect the said defendant Goff in such course of action.

After the service of the reply, counsel entered into a stipulation for the purposes of the motion to dismiss, by the terms of which it was stipulated and agreed that the defendant Goff was duly appointed a Special Assistant to the Attorney General on the 2d day of December, 1920, pursuant to a letter of appointment reading as follows:

"Hon. Guy Goff, United States Shipping

Board, Washington, D. C.—Dear Sir: You are hereby appointed a special assistant to the Attorney General, to assist in the investigation and prosecution of an alleged violation of the laws of the United States, by E. Paul Yaselli, Max Uhlin, James D. Butler, et al., and are hereby authorized to conduct grand jury and petit jury proceedings in the Southern District of New York, and the District of Columbia, and any other district in which the venue may properly be laid. You are to serve without compensation, other than that received by you as counsel for the United States Shipping Board. Please execute and return the enclosed oath of office.

"Respectfully,

"[Signed] A. Mitchell Palmer,

"Attorney General."

The stipulation further recited that defendant Goff thereafter accepted his appointment, took the oath of office, and appeared before the grand jury and presented evidence to it against the plaintiff, and conducted all of the proceedings complained of in the complaint.

The defendant Goff moved to strike out the plaintiff's reply, upon the ground that it was insufficient in law, and for judgment dismissing the complaint. The motion to strike out the reply was granted, and an order was entered dismissing the complaint, and directing that the costs of the action be taxed in favor of defendant and against plaintiff.

The question which this court must now decide is whether error was committed in striking out the reply as insufficient in law and in dismissing the complaint. We think the action of the court below did not constitute error, and we will proceed to state the reasons for our conclusion.

There are weighty reasons why judicial officers should be shielded in the proper discharge of their official duties from harassing litigation at the suit of those who think themselves wronged by their decisions and that injustice has been done. A defeated party to a litigation may not only think himself wronged, but may attribute wrong motives to the judge whom he holds responsible for his defeat. He may think that the judge has allowed passion or prejudice to control his decision. To allow a judge to be sued in a civil action on a complaint charging the judge's acts were the result of partiality, or malice, or corruption, would deprive the judges of the protection which is regarded as essential to judicial independence. It is not in the public interests that such a suit should be maintained; and it is a fundamental principle of English and American jurisdiction that such an action cannot be maintained.

In 12 Coke, 23, it is said: "In this very term, between ap Evan ap Floyd, and Richard Barker, one of the justices of the grand sessions in the county of Anglesey, and other defendants; it was resolved by Popham and Coke, Chief Justices, the Chief Baron, and Egerton, Lord Chancellor, and all the Court of Star-Chamber, that when a grand inquest indicts one of murder or felony, and after the party is acquitted, yet no conspiracy lies for him who is acquitted, against the indictors, for this that they are returned by the sheriff by process of law to make inquiry of offences upon their oath, and it is for the service of the King and the commonwealth. And as it is said in the 10 El. 265, they are compellable to serve the law, and the Court; and their indictment or verdict is matter of record, and called Veredictum and shall not be avoided by surmise or supposal, and no attaint lies. And for this reason they shall not be impeached, for any conspiracy or practice, before the indictment; for the law will not suppose any unindifferent, when he is sworn to serve the King: and with this agrees the books in 22 Ass. 77. Assise, p. 12. 21 Ed. 3, 17. 16 H. 6, 19. 47 Ed. 3, 17. 27 H. 8, 2. F. N. B. 115 a." And at page 25, after stating that the judges are to "make an account to God and the King" for their judicial acts, and are not to answer to any suggestion in the Star Chamber, it is said that a contrary rule "would tend to the scandal and subversion of all justice. And those who are the most sincere would not be free from continual calumniations, for which reason the orator said well, invigilandum est semper, multæ insidæ sunt bonis."

The English authorities are many in support of the principle above stated. Mostyn v. Fabrigas, Cowp. 161; Lowther v. Earl of Radnov, 8 East, 113; Holroyd v. Breare, 2 B. & Ald. 773; Fawcett v. Fowlis, T. B. & C. 394; Mills v. Collett, 6 Bing. 85.

In Fray v. Blackburn, 3 B. & S. 576, a judge of the Court of Queen's Bench was sued for a judicial act, and on a demurrer the point was taken that there was no allegation of malice. The plaintiff thereupon moved to amend by introducing an allegation of malice and corruption. The application to amend was denied and in denying it the court said:

"It is a principle of our law that no action will lie against a judge of one of our superior courts for a judicial act though it be alleged to have been done maliciously and

corruptly; therefore the proposed allegation would not make the declaration good. The public are deeply interested in this rule, which indeed exists for their benefit, and was established in order to secure the independence of the judges, and prevent their being harassèd by vexatious actions."

In the United States the law is not otherwise. The case of Bradley v. Fisher, 13 Wall. 335, 20 L. Ed. 646, is a leading case in the courts of this country as to the immunity of judges from actions for damages growing out of the performance of their judicial duties. The action was brought by the plaintiff to recover damages from the defendant, who was presiding judge of the Supreme Court of the District of Columbia, and he had entered an order depriving Bradley of his right to practice as an attorney in that court. In his complaint Bradley complained that the action taken was "willful, malicious, oppressive, and tyrannical." The order was entered at the close of a trial of John H. Surratt for the murder of President Lincoln, when the jury, having failed to agree on a verdict, was discharged. Bradley was one of the counsel who defended Surratt, and on the discharge of the jury the judge had immediately entered the order depriving Bradley of his right to practice in that court. This order was entered because Bradley on one of the earlier days had threatened the judge, as he was descending from the bench, with personal chastisement because of alleged insults from the bench in the course of the trial.

The court below dismissed the action, and the Supreme Court affirmed the court below in the opinion written by Justice Field. In the course of his opinion he said:

"In other words, it [the plea] sets up that the order for the entry of which the suit is brought, was a judicial act, done by the defendant as the presiding justice of a court of general criminal jurisdiction. If such were the character of the act, and the jurisdiction of the court, the defendant cannot be subjected to responsibility for it in a civil action, however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff. For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to every one who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful. As observed by a distinguished English judge, it would establish the weakness of judicial authority in a degrading responsibility.

"The principle, therefore, which exempts judges of courts of superior or general authority from liability in a civil action for acts done by them in the exercise of their judicial functions, obtains in all countries where there is any well ordered system of jurisprudence. It has been the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country. It has, as Chancellor Kent observes, 'a deep root in the common law.'"

He went on to comment upon Randall v. Brigham, 7 Wall. 523, 19 L. Ed. 285, which decided a like question, and in which he wrote the opinion of the court, and stated the nonliability of judicial officers for acts done in the performance of their judicial duties, even when the acts were in excess of their jurisdiction, "unless, perhaps, when the acts in excess of jurisdiction are done maliciously or corruptly." In his opinion in Bradley v. Fisher he explained how he happened in Randall v. Brigham to use the qualifying words, and that they were not intended "as an expression of opinion that in the cases supposed such liability would exist." And he added:

"In the present case we have looked into the authorities, and are clear, from them, as well as from the principle on which any exemption is maintained, that the qualifying words used were not necessary to a correct statement of the law, and that judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter."

Mr. Justice Davis dissented, with whom concurred Mr. Justice Clifford. Mr. Justice Davis said:

"But I dissent from the rule laid down by the majority of the court, that a judge is exempt from liability in a case like the present, where it is alleged not only that his proceeding was in excess of jurisdiction, but that he acted maliciously and corruptly. If he did so, he is, in my opinion, subject to suit the same as a private person would be under like circumstances."

In May v. Blackburn, 3 B. & S. 576,

Chief Baron Kelly, after observing that a series of decisions, uniformly to the same effect, extending from the time of Lord Coke to the present time, established the general proposition that no action will lie against a judge for any acts done or words spoken in his judicial capacity in a court of justice, and that the doctrine had been applied to the court of a coroner, and to a court-martial, as well as to the superior courts, said:

"It is essential in all courts that the judges who are appointed to administer the law should be permitted to administer it under the protection of the law, independently and freely, without favor and without fear. This provision of the law is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences. How could a judge so exercise his office, if he were in daily and hourly fear of an action being brought against him, and of having the question submitted to a jury whether a matter on which he had commented judicially was or was not relevant to the case before him?"

[1] And the general rule is that a justice of the peace, acting within his jurisdiction, is not civilly liable, even though he acts corruptly or maliciously. In Cooke v. Bangs, 31 F. 640, which was decided in 1887, the question came before the Circuit Court for the District of Minnesota, and the opinion was written by Mr. Justice Brewer, of the Supreme Court, sitting as a Circuit Justice. It was decided in that case that where a justice of the peace, having power to commit for contempt, commits a person for contempt, and on such person being liberated on habeas corpus recommitted him on a fresh warrant for the same offense, the justice was not amenable to a civil action for false and malicious imprisonment, although his action in making the second commitment was erroneous, and although it was alleged that he acted maliciously. In the course of his interesting opinion Justice Brewer said:

"In the first place, there is no officer with respect to whose integrity and character the people in this country are more particular than they are in respect to that of a judge. The people insist upon purity of life and integrity of character in the incumbent of that office, and they are as jealous of that as of any other right. A man may vote for a person for some office about whose integrity of life he may have doubt, but he is very loth to place a man in any judicial position as to whose integrity of character he has even a

12 F.(2d)—26

suspicion. Not only that, but the moment that one holding a judicial office is suspected of corruption, or of being actuated by malice, he becomes very rapidly socially ostracised. Whenever the suspicion attaches, it is as ruinous to him as when a suspicion of want of chastity attaches to a woman. Again, he is just as amenable to the criminal law as any private citizen. There is no judge, from the judge of the Supreme Court of the United States at Washington, to a justice of the peace in the smallest township of the state, who, acting on any judicial matter from corruption or from malice, but becomes amenable to the criminal law the same as any other man, and may also be removed from office by proper proceedings. So there is no danger of judges as a class feeling that they are above the law, or becoming independent of the law, or indifferent to the rights of others. This rule, which is founded on experience, is upheld with uniformity by the authorities so far as superior courts are concerned. There is scarcely a dissenting voice in all the long story that has been told in the history of the common law. With respect to all judicial officers—justices of the peace, as well as judges of the higher courts—the settled law of the Supreme Court of the United States, and I think the plain intimation of the Supreme Court of this state, is that, where they act within their jurisdiction, they are not amenable to any civil action for damages. No matter what their motives may be, they cannot be inquired into."

And, see, to the same effect, Cason v. Bone, 43 Ark. 17; Lacey v. Hendricks, 164 Ala. 280, 51 So. 157, 137 Am. St. Rep. 45; Legates v. Lingo, 8 Houst. (Del.) 154, 32 A. 80; Kress v. State, 65 Ind. 106; Moser v. Summers, 172 Ky. 553, 189 S. W. 715; Fisher v. Deane, 107 Mass. 118; Curnow v. Kessler, 110 Mich. 10, 67 N. W. 982; Connelly v. Woods, 31 Kan. 359, 2 P. 773; Pike v. Megoun, 44 Mo. 491; Grant v. Williams, 54 Mont. 246, 169 P. 286; Mangold v. Thorpe, 33 N. J. Law, 134; Butler v. Potter, 17 Johns. (N. Y.) 145; Cunningham v. Dillard, 20 N. C. 485; Landseidel v. Culeman, 47 N. D. 275, 181 N. W. 593, 13 A. L. R. 1339; Johnston v. Moarman, 80 Va. 131. There are, however, authorities in certain jurisdictions in which it has been held or intimated, contrary to the general rule, that a justice of the peace who acts corruptly or maliciously is liable in damages. Ambler v. Church, 1 Root (Conn.) 211; Kennedy v. Barnett, 64 Pa. 141; Knell v. Briscoe, 49 Md. 414; Williamson v. Lacy, 86 Me. 80, 29 A. 943, 25 L. R. A. 506; Howe v. Mason, 14

Iowa, 510; Abrams v. Carlisle, 18 S. C. 243. These are mostly early or relatively early decisions, and seem to be contrary to the weight of authority. The rule of immunity "applies alike to the highest judges in the land and to the lowest officer who sits as a court and tries petty causes."

In 18 Am. & Eng. Encyc. 46, the law is stated:

"In common with other judicial officers, justices of the peace are not amenable to any civil action for damages for their judicial acts, however erroneous or corrupt. The only exception was where a justice of the peace exceeded his jurisdiction."

And in Holcomb v. Cornish, 8 Conn. 375, it was said that "a judge or justice [of the peace] is never answerable in a civil suit for a judgment rendered by him, in his judicial capacity, however erroneous, provided he has jurisdiction."

In 32 C. J. 982, it is said:

"Where a judge has full jurisdiction of the subject-matter and of the parties, he is not liable civilly where he acts erroneously, illegally, or irregularly, and he is not chargeable with costs resulting from his erroneous rulings. * * * Where the circumstances are such that the judge would otherwise be exempt from a civil action, as a general rule, he is not liable, although he has acted maliciously or corruptly."

Judge Cooley, in his great work on Torts (3d Ed.) vol. 2, p. 795, says:

"Whenever, therefore, the state confers judicial powers upon an individual, it confers them with full immunity from private suits. In effect, the state says to the officer that these duties are confided to his judgment; that he is to exercise his judgment fully, freely, and without favor, and he may exercise it without fear; that the duties concern individuals, but they concern more especially the welfare of the state, and the peace and happiness of society; that if he shall fail in the faithful discharge of them he shall be called to account as a criminal, but that in order that he may not be annoyed, disturbed, and impeded in the performance of these high functions, a dissatisfied individual shall not be suffered to call in question his official action in a suit for damages. This is what the state, speaking by the mouth of the common law, says to the judicial officer. The rule thus laid down applies to large classes of offices, embracing some the powers attached to which are very extensive, and others whose authority is exceedingly limited. It applies to the highest judge in the state or nation, but it also applies to the lowest officer who sits as a court and tries petty cases, and it applies not in respect to their judgments merely, but to all process awarded by them for carrying their judgments into effect."

And the immunity which is extended to the judges is in like manner extended to the attorneys in the presentation of the client's case to the court or the jury.

In Munster v. Lamb, 11 Q. B. D. 588, an action was brought against a solicitor for damages arising out of defamatory statements alleged to have been falsely and maliciously made by defendant concerning the plaintiff while the defendant was acting as a solicitor for a client against whom criminal proceedings had been instituted by the plaintiff who was a barrister. The statements complained of were so untrue and improper as stated in the court's opinion that defendant "did not attempt to justify the expressions used by him. It was impossible to do so." The court held that the words spoken were irrelevant to the facts before the court, were uttered maliciously and without justification or excuse, but that nevertheless an action could not be maintained. In so holding the court said:

"To my mind it is illogical to argue that the protection of privilege ought not to exist for a counsel, who deliberately and maliciously slanders another person. The reason of the rule is, that a counsel, who is not malicious and who is acting bona fide, may not be in danger of having actions brought against him. If the rule of law were otherwise, the most innocent of counsel might be unrighteously harassed with suits, and therefore it is better to make the rule of law so large that an innocent counsel shall never be troubled, although by making it so large counsel are included who have been guilty of malice and misconduct."

In Hoar v. Wood, 3 Metc. (Mass.) 193, Chief Justice Shaw stated what is believed still to be the rule:

"We take the rule to be well settled by the authorities, that words spoken in the course of judicial proceedings, though they are such as impute crime to another, and therefore if spoken elsewhere, would import malice and be actionable in themselves, are not actionable, if they are applicable and pertinent to the subject of inquiry. The question, therefore, in such cases is not whether the words spoken are true, not whether they are actionable in themselves, but whether they were spoken in the course of judicial proceedings, and whether they were relevant and pertinent to the cause or subject of inquiry. * * * Still this privilege must

be restrained by some limit, and we consider that limit to be this: That a party or counsel shall not avail himself of his situation, to gratify private malice by uttering slanderous expressions, either against a party, witness or third person, which have no relation to the cause or subject-matter of the inquiry. Subject to this restriction, it is, on the whole, for the public interest, and best calculated to subserve the purposes of justice, to allow counsel full freedom of speech, in conducting the causes, and advocating and sustaining the rights, of their constituents; and this freedom of discussion ought not be impaired by numerous and refined distinctions."

In 1835 in Bicknell v. Dorion, 16 Pick. (Mass.) 478, 490, the same great judge, writing for the court, expressed the opinion that an attorney would not be liable in an action for malicious prosecution unless he commenced the suit without the authority of the person in whose name he sued, or "unless there be a conspiracy to bring a groundless suit, knowing and understanding it to be groundless, and without any intent or expectation of maintaining the suit." In the course of his opinion he said:

"I am not prepared to say that if a person applies to an attorney wishing to have a groundless suit commenced, for the purpose of detaining the property or person of another under the forms of legal process, and the attorney yields to such a request, that they would not render themselves liable to an action at the suit of the party thus injured. It would be very different from the case where the client requests an action to be brought, on his responsibility, however groundless the attorney himself may think it to be, and though he explicitly declares to the client, that he cannot maintain the action. 'Knowing,' 'believing,' or 'supposing' it groundless are only expressions indicating different degrees of the attorney's belief; the party may have grounds for proceeding, not known to the attorney, and he has a right to judge for himself."

And in Cooley on Torts (3d Ed.) vol. 1, p. 426, it is said: "The case of the party presenting his case to court or jury, or of counsel standing in his place doing the same, is also one of absolute privilege."

Not only are the judges exempt, but grand jurors are in like manner exempt from actions for malicious prosecutions. In 17 Eng. & Am. Encyc. of Law, p. 1302, the law is stated as follows: "However recklessly and maliciously a grand jury may have acted in returning an indictment against another without evidence or probable cause, the jurors are not liable to an injured person in an action for malicious prosecution."

And in 28 C. J. p. 816, it is said: "Grand jurors are protected in the discharge of their duties during the whole of their proceedings, and a person cannot be held to answer in an action for malicious prosecution for what he said or did, as a member of the grand jury, however malicious or destitute of probable foundation his action may have been."

Not only are grand jurors exempt, but it is held that a petit juror is not liable for any statements made by him during the deliberations of the jury after it has retired to consider a verdict, and that his privilege in this respect is not limited to the words which are shown to be pertinent to the questions arising for decision. See 36 Cyc. 1255.

And in Hawkins, Pleas of the Crown, vol. 1, p. 349, it is said: "Since the safety of the innocent and punishment of the guilty doth so much depend upon the fair and upright proceeding of the jurors, it is of the utmost consequence that they should be as little as possible under the influence of any passion whatsoever. And, therefore, lest they should be biased with the fear of being harassed by a vicious suit for acting according to their consciences (the danger of which might easily be insinuated where powerful men are warmly engaged in a cause and thoroughly prepossessed of the justice of the side which they espouse) the law will not leave any possibility for a prosecution of this kind."

In England statements made by a witness testifying in court are absolutely privileged. Munster v. Lamb, 11 Q. B. D. 588; Seaman v. Nethercleft, 2 C. P. D. 53. And in this country there are courts which have stated the rule in the same unqualified way. See Sebree v. Thompson, 126 Ky. 223, 103 S. W. 374, 11 L. R. A. (N. S.) 723, 15 Ann. Cas. 770; Hunckel v. Voneiff, 69 Md. 179, 14 A. 500, 17 A. 1056, 9 Am. St. Rep. 413; Calkins v. Sumner, 13 Wis. 193, 198, 80 Am. Dec. 738; Cooley v. Galyon, 109 Tenn. 1, 70 S. W. 607, 60 L. R. A. 139, 97 Am. St. Rep. 823. In some of our courts, however, the rule is not so broadly stated. Wright v. Lothrop, 149 Mass. 385, 21 N. E. 963; White v. Carroll, 42 N. Y. 161, 1 Am. Rep. 503; Weil v. Lynds, 105 Kan. 440, 185 P. 51, 12 A. L. R. 1236.

[2] It has been said that no public officer is responsible in a civil suit for a judicial determination, however erroneous it may be, and however malicious the motive which has produced it. A public office is an agency for the state, the duties of which involve in their performance the exercise of some portion of

the sovereign power, either great or small. The rule of responsibility of a public officer, as held by the courts, is said to be that, if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an erroneous performance, is regarded as an injury to the public, and not as one to the individual. It is to be redressed in some form of public prosecution, and not by a private person who conceives himself specially injured. Cooley on Torts (3d Ed.) vol. 2, p. 756. In Thibodaux v. Thibodaux, 46 La. Ann. 1528, 16 So. 450, it is said: "Officials in the performance of a duty imposed by law cannot be held in damages for acts done strictly within the lines of official duty."

In Spalding v. Vilas, 161 U. S. 483, 16 S. Ct. 631, 40 L. Ed. 780, a suit was brought against the Postmaster General, who performed an act in the course of his official duties which worked injury to a private individual, and which it was alleged he had done maliciously. As the Supreme Court said, the question was whether the action could be maintained "because of the allegation that what the officer did was done maliciously." The court held the action not maintainable, and that the same general considerations of public policy and convenience which demanded for judges of courts of superior jurisdiction immunity from civil suits for damages arising from acts done by them in the course of the performance of their judicial functions applied to the case.

[3] A United States attorney, if not a judicial officer, is at least a quasi judicial officer, of the government. He exercises important judicial functions, and is engaged in the enforcement of the law. The reasons for granting immunity to judges, jurors, attorneys, and executive officers of the government apply to a public prosecutor in the performance of the duties which rest upon him. To hold that an attorney of a private client is clothed with absolute privilege, and that a public prosecutor, whose duty it is to enforce the laws of the United States, is not exempt because of what he says and does in the discharge of the duties of his office, is so unreasonable, so contrary to sound public policy, and to the fundamental principles of our jurisprudence, that we cannot accept it.

The courts have held that a prosecuting attorney is not liable in an action for a prosecution instituted with malice and without probable cause. In Smith v. Parman, 101 Kan. 115, 165 P. 663, L. R. A. 1917F, 698, a suit for malicious prosecution was instituted against the prosecuting attorney of a municipal corporation. The suit was dismissed in the court below, and the dismissal was affirmed by the Supreme Court, which said:

"The public prosecutor, in deciding whether a particular prosecution shall be instituted or followed up, performs much the same function as a grand jury. If, while he has a question of that kind under advisement, he is charged with notice that he may have to defend an action for malicious prosecution in case of a failure to convict, his course may be influenced by that consideration, to the disadvantage of the public. Communications made to a public prosecutor relating to offenses against the law are treated as privileged, because 'persons having knowledge regarding the commission of a crime ought to be encouraged to reveal to the prosecuting attorney fully, freely, and unreservedly the source and extent of their information.' Michael v. Matson, 81 Kan. 360, 366, 105 P. 537, 540, L. R. A. 1915D, 1. We think the reason for granting immunity to judges and grand jurors applies with practically equal force to a public prosecutor in his relations to actions to punish infractions of the law. There is no great danger that abuse of power will be fostered by this exemption from civil liability, for the prosecutor is at all times under the wholesome restraint imposed by the risk of being called to account criminally for official misconduct (Gen. Stat. 1915, § 3588), or of being ousted from office on that account (Gen. Stat. 1915, § 7603)."

In Griffith v. Slinkard, 146 Ind. 117, 44 N. E. 1001, the court held that a prosecuting attorney was not liable in an action for malicious prosecution for participation in procuring an indictment maliciously and without probable cause. The court, after calling attention to the law laid down by it in Hunter v. Mathis, 40 Ind. 356, that, however reckless and malicious the grand jury may have acted in returning an indictment without evidence or probable cause, they were not liable in an action for malicious prosecution, said: "There is therefore no more liability against the prosecuting attorney than there is against the grand jury for the return of an indictment maliciously and without probable cause."

In Watts v. Gerking, 111 Or. 641, 222 P. 318, 228 P. 135, 34 A. L. R. 1489, decided in 1924, the court, holding that a district attorney might be held liable in a civil action for damages for maliciously causing an arrest for an offense he knew had not been committed, said: "As the statute defining the powers and prescribing the duties of district attorneys is for the protection of the public, it should be liberally construed to effectuate the purpose of its enactment, and wide latitude

should be given to the exercise of discretion under it. But from this it does not follow that a district attorney is not to be held accountable in a civil action for damages at the suit of an injured party for maliciously causing the arrest of such party for a pretended offense, which, at the time of the arrest, he knew had not been committed at all; for in such case the district attorney is not acting in the line of his duty or within the scope of his authority."

In the above case a petition for a rehearing was granted, and the court reversed itself, setting aside its former opinion, and held that the district attorney was not liable to the civil action. In its second opinion, which was an elaborate one, reviewing the authorities, the court said: "Grounding their reasoning upon public policy, the authorities teach us that a grand juror is not answerable in damages in a civil proceeding for his action as such juror, however erroneous his action may be, and notwithstanding that such action may have been actuated by a malicious motive. * * * This doctrine being applicable to grand jurors, there is no good reason why it should not shield the prosecuting attorney from civil liability in the case at bar." And it was also said: "In reaching a decision, we are confronted with a determination that concerns public policy. We are face to face with a law-enforcing problem. Criminal law does not enforce itself. It demands the assistance of valid evidence and fearless officials to put it in execution. Because of their tendency to obstruct the administration of justice, it is the policy of the law to discourage actions for malicious prosecution."

In Schneider v. Shepherd, 192 Mich. 82, 158 N. W. 182, L. R. A. 1916F, 399, the prosecuting attorney directed the chief of police of the city of Detroit to raid a certain house and arrest the inmates and bring them to police headquarters. This he did on the strength of a report made to him by a private investigator that the place to be raided was a house of prostitution. It was in fact the home of a reputable citizen, who had resided there for 30 years. The action brought was for an illegal arrest, and the defense interposed was probable cause, and that defendant was entitled to the immunity of a quasi judicial officer. The trial judge called attention to the fact that under the Constitution and statutes of Michigan the duty of prosecuting attorneys was to prosecute or defend in all the courts of the county all prosecutions, suits, applications, and motions, whether civil or criminal, in which the state or county may be a party or interested. The judge went on to say: "The investigation of alleged crimes by the prosecuting attorney, through private individuals, the acceptance of their reports as basic information upon which is issued a peremptory order to the police to arrest, without warrant, the suspected criminals, finds no statutory sanction in the prescribed powers and duties of a prosecuting attorney. If he proceeds upon such a course of action, he does so at the same peril as does the unofficial citizen. His office is not a cloak to protect him from liability for a wrong thereby resulting to an innocent person subjected to a false arrest. The statute affords no such robe of immunity nor grants any such power." The Supreme Court agreed, and stated that there was no escape from the conclusion that the prosecuting officer under the facts placed himself in no different situation than that of any private informer. And we are unable to see that the case has any application to the facts in the instant case.

It does not overrule or conflict with the decision of that court in Curnow v. Kessler, 110 Mich. 10, 67 N. W. 982. In that case the court said: "It is indispensable to the administration of justice that a judge *or other judicial officer, who acts within the scope of his jurisdiction,* may act freely, without any fear of being held responsible in a civil action, or having his motives brought in question by one injuriously affected by his judgments. This immunity is uniformly held not to be affected by the motives with which it is alleged that the judicial officer has performed his duty. If the officer be in fact corrupt, the public has its remedy, but the defeated suitor cannot be permitted to obtain redress against the judge by alleging that the judgment against him was the result of corrupt or malicious motives." And this was said in a case in which a justice of the peace, who had jurisdiction to issue a warrant of arrest, was held not personally liable to an individual arrested upon the ground that such action was the result of corrupt or malicious motives.

In Leong Yau v. Carden, 23 Hawaii, 362, 369, the court said: "A public prosecuting officer, in determining whether certain purported facts which have been brought to his attention justify the accusation and prosecution of a person believed to have committed an offense, acts in a quasi judicial capacity, and he is not to be held liable in damages for an honest mistake or error of judgment in instituting a criminal proceeding against such person. But if he prosecutes without probable cause and with malice he certainly is in no better position than the judge of a court—

superior or inferior—who proceeds maliciously and without any jurisdiction, or the head of an executive department who acts maliciously and without color of authority. Public prosecuting officers are entitled to protection against claims growing out of the discharge of their duties done in good faith though with erroneous judgment, but private individuals are entitled to the protection of the law against any conduct of such officers which is at once reckless, malicious, and damaging."

[4] The court in that case indicates its opinion that a judge of a superior court, if he acts maliciously and without jurisdiction, is liable. And we do not doubt that he would be liable, if he so acted and there was an entire absence of all jurisdiction over the subject-matter. Neither do we doubt that, if a prosecuting attorney acts in like manner in a matter which is clearly outside the duties of his office, he too is liable. But that clearly is not this case. The defendant Goff was appointed by the Attorney General of the United States for the specific purpose of assisting in the investigation and prosecution of an alleged violation of the laws of the United States and was authorized to conduct grand jury and petit jury proceedings, not only in the Southern district of New York, but in any other district in which the venue could properly be laid. It is impossible to say that he acted outside the duties which were specifically devolved upon him. If in the discharge of his official duties he acted maliciously, he is no more liable in our opinion than a judge of a superior court of general jurisdiction who acted within his jurisdiction, but acted maliciously.

In 18 C. J. p. 1318, § 46, the law is thus stated: "A prosecuting attorney, being a judicial officer of the state, is not liable in damages for acts done in the course of his duty, although willful, malicious or libelous."

In 23 Am. & Eng. Encyc. 286, it is said: "A prosecuting attorney is not liable for libel in reading in open court an indictment known to be false, nor for malicious prosecution in including in an indictment one against whom no bill has been found, nor is he liable *for procuring a conviction unless he acted maliciously.* * * * "

The only authority cited in support of the statement we have italicized is the case of Arnold v. Hubble, 38 S. W. 1041, 18 Ky. Law Rep. 947, decided in 1897. The opinion of the court covers 10 lines. In that case a city attorney was held not liable for having procured an erroneous conviction of a violation of a city ordinance, where the judgment was

not void, and the complaint failed to allege that he acted with malicious or corrupt motives. The court referred in its opinion to Revill v. Pettit, 3 Metc. (Ky.) 315, which was decided in 1860. It was decided in that case that, where a justice of the peace, having a limited judicial authority, acts beyond the scope of his authority, or acts within the limits of his jurisdiction, and is actuated by malicious or corrupt motives, he renders himself liable to the party injured, and it was further decided that the privileges of an attorney at law do not protect him from the consequences of procuring or advising a judicial officer to commit an injurious act beyond the limit of his authority. It is enough to say of this case that, in so far as it asserts the doctrine that a judicial officer, acting within the limits of his jurisdiction, is liable to a private action if he acts from impure or corrupt motives, it is in direct conflict with the weight of authority in England and the United States, and with the decisions of the Supreme Court of the United States already set forth in this opinion.

[5] In our opinion the law requires us to hold that a special assistant to the Attorney General of the United States, in the performance of the duties imposed upon him by law, is immune from a civil action for malicious prosecution based on an indictment and prosecution, although it results in a verdict of not guilty rendered by a jury. The immunity is absolute, and is grounded on principles of public policy. The public interest requires that persons occupying such important positions and so closely identified with the judicial departments of the government should speak and act freely and fearlessly in the discharge of their important official functions. They should be no more liable to private suits for what they say and do in the discharge of their duties than are the judges and jurors, to say nothing of the witnesses who testify in a case.

This brings us to the consideration of another and novel question, which has not, so far as we are informed, before been presented to the courts. In his reply to the answer which defendant Goff filed, the plaintiff admitted that the appointment of Goff as a special assistant to the Attorney General was made by the latter to assist in the prosecution of plaintiff for an alleged violation of the laws of the United States by the plaintiff, and he admitted that the duration of the appointment extended beyond the time of the indictment and arrest thereunder of the plaintiff. The plaintiff then went on to allege on information and belief that defendants and Con-

rad had conspired to prosecute plaintiff maliciously, and as a step in furtherance of the plan confederated and agreed that Goff would obtain an appointment as an assistant to the Attorney General for the purposes of the prosecution. The reply contained other allegations concerning the details of the plan of the conspiracy, and these have been stated in an earlier part of this opinion. The court below on motion struck out the reply.

[6] This raises the question whether the immunity which attaches, as we hold it does, to a prosecuting officer, applies to shield one who conspires willfully and maliciously to get himself appointed as prosecutor, in order that he may willfully and maliciously indict and prosecute the person he seeks to punish. In our opinion, the reasons which compel us to hold that one who obtains an appointment as a prosecuting officer of the government is immune from civil liability for acts done by him in the discharge of his official duties apply in like manner to protect him against such a charge as that he was governed by improper motives in securing the appointment. The important fact is that he was appointed to the office, and, having been appointed, the public interests require that he shall be free and fearless to act in the discharge of his official duties. If he cannot be charged with acting willfully and maliciously after he gets appointed to the office, no more can he be charged with having conspired to get into the office in order to act willfully and maliciously after he gets his appointment. The one charge is as much to be feared as the other, and is equally derogatory to his public character and usefulness in the office. We are unable to distinguish between the two cases in principle.

Our attention is called to Stewart v. Cooley, 23 Minn. 347, 23 Am. Rep. 690, upon which the plaintiff appears strongly to rely. His counsel asserts that it is perfectly clear that a wrongdoer cannot become immune by the successful accomplishment of part of the wrong which enables him to do the rest; that is, the obtaining of the official position which enables him to conduct the unwarranted but desired prosecution. He adds: "One case precisely of that kind has been found. Stewart v. Cooley, 23 Minn. 347, 23 Am. Rep. 690." It is comment enough upon that case to incorporate herein the following criticism of the case made by Judge Cooley in his work on Torts (3d Ed.) vol. 2, p. 801, which we adopt and make our own:

"The action in that case was against the judge of a municipal court and others, charging that they conspired to institute a malicious prosecution against the plaintiff, and that one of the defendants made complaint against the plaintiff for perjury, upon which the judge and clerk issued a warrant for his arrest, which was served, and the plaintiff brought into court for examination, whereupon he was discharged for the failure of the complainant to appear. This complaint was held to set forth a good cause of action. The wrongful act on the part of the judge here must have consisted in the issuing of process, and as to that he could have had no discretion if the complaint was sufficient, or, if he had, it was a judicial discretion, and to hold him liable by charging some bad motive lying back of it seems to come directly within the condemnation of Bradley v. Fisher, 13 Wall. 335 [20 L. Ed. 646], above referred to."

The "one case precisely of that kind" which the plaintiff's counsel was sure he had found is a case which we decline to follow.

The reply was properly stricken out, and judgment is affirmed.