Chief Judge KOZINSKI,
dissenting in part:
1. Adjectives matter. They’re not as action-packed as verbs, nor as self-sufficient as nouns. But adjectives do make a *941 difference. Here, the majority overlooks a crucial one: “special.”
Dennis Wilenchik wasn’t just any prosecutor: He was a special prosecutor. He got the job because his crony, County Attorney Andrew Thomas, gave it to him. Plaintiffs allege Wilenchik used that power to harass Thomas’s and Sheriff Joe Arpaio’s enemies. For this, the majority anoints Thomas with every governmental wrongdoer’s favorite unguent, absolute immunity.
The Supreme Court has told us that “absolute prosecutorial immunity [is justified] only for actions that are connected with the prosecutor’s role in judicial proceedings.” Burns v. Reed, 500 U.S. 478, 494, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). By appointing Wilenchik as special prosecutor, Thomas took no action remotely connected with any judicial proceeding. Instead, he gave up the power to take any such action and transferred it to his special buddy, Wilenchik.
Van de Kamp v. Goldstein, 555 U.S. 335, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009), holds that prosecutors have absolute immunity for “the types of activities ... [that] necessarily require legal knowledge and the exercise of related discretion.” Id. at 344, 129 S.Ct. 855. When Thomas appointed Wilenchik as his cat’s paw, he was exercising discretion alright, but not discretion that required legal knowledge. The whole point of handing a case over to a special prosecutor is to give up discretion over any and all prosecutorial decisions. Appointing a special prosecutor is an act of abandoning prosecutorial discretion, not exercising it.
Here, Thomas recognized (correctly) that he could not decide whether to prosecute plaintiffs because of his obvious conflict of interest as a target of their criticism. So, when Thomas appointed a special prosecutor, he (1) relinquished discretion and thus (2) cut himself off from any “role in judicial proceedings,” Burns, 500 U.S. at 494, 111 S.Ct. 1934, or any “direet[] connection] with the conduct of a trial,” Van de Kamp, 555 U.S. at 344, 129 S.Ct. 855. That’s the opposite of the activity for which Van de Kamp provided absolute immunity. It’s also the opposite of “the decision to prosecute,” which the Supreme Court found protected by absolute immunity in Hartman v. Moore, 547 U.S. 250, 261-62, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006). And it’s the opposite of “initiating a prosecution,” which the Court found protected by absolute immunity in Imbler v. Pachtman, 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).
The Court extended absolute immunity to a prosecutor’s “general methods of supervision and training” of those working in his office, because such activities “require legal knowledge and the exercise of related discretion.” Van de Kamp, 555 U.S. at 346, 344, 129 S.Ct. 855. Van de Kamp explicitly distinguished between the activity at issue there — “a kind that itself is directly connected with the conduct of a trial” — and “administrative duties concerning, for example, workplace hiring.” Id. at 344, 129 S.Ct. 855. It is thus perfectly clear that hiring and firing of prosecutors is an administrative action that is not protected by absolute immunity. See also Forrester v. White, 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (“[A] judge who hires or fires a.probation officer cannot meaningfully be distinguished from a district attorney who hires and fires assistant district attorneys, or indeed from any other Executive Branch official who is responsible for making such employment decisions. Such decisions ... are often crucial to the efficient operation of public institutions ..., yet no one suggests that they give rise to absolute immunity from liability in damages under § 1983.”).
*942 If hiring and firing line prosecutors is not protected by absolute immunity, appointing a special prosecutor certainly is not. Subordinate prosecutors, after all, require general supervision and training, which remain the chief prosecutor’s responsibility. Not so a special prosecutor. Once appointed, he serves as an independent agent and makes all prosecutorial decisions without any input or oversight of the chief prosecutor. There is absolutely no justification for giving Thomas absolute immunity for the non-prosecutorial and self-serving act of appointing Wilenchik to do his dirty work.
The majority finds “most closely analogous” to our case an eighty-six-year-old decision of the Second Circuit that was summarily affirmed by the Supreme Court. Maj. op. at 931 (citing Yaselli v. Goff, 12 F.2d 396 (2d Cir.1926), aff'd, 275 U.S. 503, 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927) (per curiam)). Yaselli presented the exact converse of the question before us: It asked whether a special prosecutor was entitled to absolute immunity for conspiring to get appointed to that post. The Second Circuit, quite understandably, found the act of getting appointed as special prosecutor a mere prelude to serving as special prosecutor and therefore entitled to the same immunity. Seeking appointment, like acting on one’s appointment, is precisely the type of discretionary act by a prosecutor that receives absolute immunity. But, as I’ve explained, the act of appointing is an administrative act whose entire purpose is to give away discretion, not to exercise it. Yaselli is too fragile a precedent to support the weight the majority places on it.
By enveloping Thomas with absolute immunity, my colleagues encourage malicious or corrupt prosecutors to do exactly what plaintiffs allege Thomas did here: intimidate and harass political rivals by delegating prosecutorial authority to a straw man. It’s a blueprint for prosecutorial excess and abuse; we’ll rue the day we started down this road.
2. Nor can I assent to the majority’s dismissal of plaintiffs’ selective enforcement claim based on their middle-of-the-night arrests for allegedly violating Arizona’s grand jury secrecy statute. The majority faults plaintiffs for making “only a vague assertion that those who commit nonviolent misdemeanors are usually not arrested” and for “fail[ing] to specify a similar class, such as those alleged to have violated the grand jury secrecy statute, with which comparisons can be made to Lacey’s case.” Maj. op. at 920 n. 13. But here’s what plaintiffs say in their complaint: “Misdemeanor violations that do not threaten lives are usually handled by the issuance of citations, not by commando raids, arrests, handcuffs, and jail cells in the dead of night.”
This patently plausible allegation suffices to make out a selective enforcement claim. Plaintiffs meet “[t]he similarly situated requirement,” United States v. Armstrong, 517 U.S. 456, 466, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996): They identify the class of those accused of non-violent misdemeanors, and allege they were treated differently from other members of that class. They thus “identify a similarly situated class against which the plaintiff[s’] class can be compared.” Rosenbaum v. City & Cnty. of S.F., 484 F.3d 1142, 1153 (9th Cir.2007) (internal quotation marks omitted). Why the majority demands a narrower class, like those charged with violating the exact same statute, is a mystery to me; the majority offers no explanation. And it makes no sense: Being treated differently from a large class provides a more compelling case for selective enforcement than being treated worse than a *943 small class. The majority has it entirely backward.
I therefore must dissent from Subsection III.C.2, maj. op. at 928-34, and footnote 13 in Subsection III.A.2.d, maj. op. at 920 n. 13, of Judge Bybee’s otherwise splendid decision.