351 F.2d 533
 Theresa ROBICHAUD, by her Guardian ad Litem, Monroe G. McKay, Appellant,
v.
Charles N. RONAN, individually and as County Attorney for Maricopa County, Beatrice Ronan, Felix Gordon, individually and as Deputy County Attorney for Maricopa County, and Anne Gordon, Appellees.
 No. 19663.
 United States Court of Appeals Ninth Circuit.
 October 8, 1965.
 
 John J. Flynn, Roger W. Kaufman, Lewis, Roca, Scoville, Beauchamp & Linton, Phoenix, Ariz., for appellant.
 John H. Westover, Nicholas Udall, O'Connor, Anderson, Westover, Killingsworth & Beshears & Jennings, Strouss, Salmon & Trask, Allen L. Feinstein, Phoenix, Ariz., for appellees.
 Before HAMLEY, BROWNING, and ELY, Circuit Judges.
 ELY, Circuit Judge.
 
 
 1
 This appeal is from dismissal of a suit based upon sections of the Civil Rights Acts, 42 U.S.C. §§ 1983, 1988 and 28 U.S.C. § 1343. Our jurisdiction is conferred by 28 U.S.C. § 1291.
 
 
 2
 The ground for dismissal of the action was given as lack of jurisdiction over the persons of the defendants. The district court clearly erred in so basing the dismissal, and appellees do not here contend that no personal jurisdiction existed. The issue which should have been met is whether the appellant (plaintiff) stated a claim upon which relief could possibly be granted.
 
 
 3
 The appellees (defendants) are the County Attorney and the Deputy County Attorney for Maricopa County, Arizona.[1] They contend that they are immune from liability for acts committed in the performance of their official duties.
 
 
 4
 In reviewing the correctness of dismissal for failure to state a claim, we must accept the allegations of the complaint in the light most favorable to the plaintiff. They may not be true, of course, but they set forth, substantially, the following:
 
 
 5
 When the chain of events leading to the bringing of the suit originated, Theresa Robichaud was a child, sixteen years of age. The defendants filed and prosecuted a complaint in which Theresa was charged with murder in the first degree. The complaint was filed with malicious motive and without probable cause. Theresa was arrested and placed in custody for a non-bailable offense. (Ariz. Const., Art. II, § 22, A.R.S.; Ariz.Rev. Stat.Ann. § 13-1571.) At a point early in the time of her custody, Theresa reached her seventeenth birthday. She was confined in the "drunk tank" with female adult prisoners for twenty-five days without the benefit of a preliminary hearing to explore into the reason for her confinement. During her imprisonment she was taken outside Maricopa County in furtherance of unsuccessful efforts to obtain her confession.[2] Quoting from the allegations, "Without being informed of her right to counsel, plaintiff was placed in a room with a man who had confessed the murders with which plaintiff was charged. Defendants sought by trick and deceit to cause plaintiff to say or do things which would incriminate her. Taking advantage of plaintiff's youth and inexperience, defendants caused plaintiff to leave the jail and to go with deputy sheriffs to the scene of the crime of which plaintiff was accused. There, by various accusations, they attempted to intimidate plaintiff into confessing crimes which she had not committed. These acts were done with the intent of depriving her of her right to counsel and of doing her great mental and physical damage."
 
 
 6
 Theresa was told that even though she had lawyers only the defendants and the deputy sheriffs could help her, and then only if she told the "truth." Although admitting that there was insufficient evidence to establish probable cause for holding plaintiff as charged, the defendants refused to dismiss the complaint upon forming the belief that she would not be retained under the jurisdiction of the juvenile courts.
 
 
 7
 Plaintiff alleges that she was informed and that she believes that the defendants had prepared a complaint charging her with a different crime, but that such complaint was not filed and the murder complaint not dismissed because the former charged a bailable offense and defendants were determined to deprive Theresa of her liberty. It is also complained that defendants refused to produce evidence or to proceed with a preliminary hearing, thus causing unreasonable and illegal deprivation of liberty. It is alleged that the defendants, at least some nine days before the scheduled preliminary hearing, were expressly reprimanded for acts of intimidation and improper attempts to force Theresa to confess.
 
 
 8
 All of the above acts are alleged to have been done either by the defendants themselves or by persons acting under their authority and at their direction. Theresa was finally released upon a writ of habeas corpus, the order being predicated upon the finding that there was no probable cause for holding her on a murder charge. Theresa then filed her suit, urging that defendants, while acting under the color of state law, exceeded their jurisdiction and deprived her of rights secured generally by the fifth, sixth, eighth, and fourteenth amendments of the Federal Constitution.
 
 
 9
 We are again required to examine the extent of immunity of public officials from suits for damages under the provision of Rev.Stat. 1979 (1875), 42 U.S.C. § 1983, which reads:
 
 
 10
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."[3]
 
 
 11
 No immunity from liability for the proscribed conduct is mentioned in the statute, but courts have engrafted an immunity in favor of certain public officials for acts done in the performance of their traditional official functions. The immunities recognized in these cases are generally those which were respected under the common law. See, e. g., Tenney v. Brandhove, 341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) (state legislator). Among the cases in which the immunity of a judge has been upheld are Haldane v. Chagnon, 345 F.2d 601 (9th Cir. 1965), Harvey v. Sadler, 331 F.2d 387 (9th Cir. 1964), Agnew v. Moody, 330 F.2d 868 (9th Cir. 1964), Harmon v. Superior Court, 329 F.2d 154 (9th Cir. 1964), and Sires v. Cole, 320 F.2d 877 (9th Cir. 1963). On the other hand, certain public officers, such as policemen, have been held not to be immune. E. g., Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); York v. Story, 324 F.2d 450 (9th Cir. 1963) cert. denied, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964). The arguments generally advanced in support of immunity are, "(1) the danger of influencing public officials by threat of a law suit; (2) the deterrent effect of potential liability on men who are considering entering public life; (3) the drain on the valuable time of the official caused by insubstantial suits; (4) the unfairness of subjecting officials to liability for the acts of their subordinates; (5) the theory that the official owes a duty to the public and not to the individual; (6) the feeling that the ballot and the formal removal proceeding are far more appropriate ways to enforce the honesty and efficiency of public officers." Comment, 66 Harv.L.Rev. 1285, 1295, n. 54 (1953). That these are important considerations cannot be questioned. See also, Comment, 68 Harv.L.Rev. 1229 (1955).
 
 
 12
 Our court has held, in recent decisions, that a prosecuting attorney is immune from liability for damages under 42 U.S.C. § 1983. Agnew v. Moody, supra; Harmon v. Superior Court, supra; Sires v. Cole, supra. The foundation of these opinions is that prosecuting attorneys, in acting as quasi-judicial officers, should enjoy the same immunity from civil liability as that which protects a judge. We adhere to our former opinions, but we cannot extend the doctrine of immunity beyond its purpose.
 
 
 13
 Section 1983, first enacted in 1871, was intended to provide a remedy to persons subjected to "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, * * *" United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941), quoted in Monroe v. Pape, supra, 365 U.S. at 184, 81 S.Ct. at 482. Thus, if immunities are broadly granted to state officers without consideration of the nature of their alleged misdeeds and the reason for the immunity, the statute becomes subject to circumvention, if not emasculation.
 
 
 14
 The key to the immunity previously held to be protective to the prosecuting attorney is that the acts, alleged to have been wrongful, were committed by the officer in the performance of an integral part of the judicial process. It is in this light that we must examine the case at bar.
 
 
 15
 The earliest federal case which refers to "quasi judicial immunity" appears to be Yaselli v. Goff, 12 F.2d 396, 56 A.L.R. 1239 (2d Cir. 1926), aff'd per curiam, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927). There, it was held that a prosecuting attorney was immune from suit for malicious prosecution, regardless of the existence of malice or wilfulness on his part. In its opinion the court wrote, "A United States attorney, if not a judicial officer, is at least a quasi judicial officer, of the government. He exercises important judicial functions, and is engaged in the enforcement of the law." 12 F.2d at 404. The court continued, "The immunity is absolute, and is founded on principles of public policy. The public interest requires that persons occupying such important positions and so closely identified with the judicial departments of the governments should speak and act freely and fearlessly in the discharge of their important official functions. They should be no more liable to private suits for what they say and do in the discharge of their duties than are the judges and jurors, to say nothing of the witnesses who testify in a case." 12 F.2d, at 406. It is upon Yaselli that the concept of immunity for prosecuting attorneys, as quasi-judicial officers, is founded. See, e. g., Kenney v. Fox, 232 F.2d 288, 290 (6th Cir. 1956), cert. denied sub nom. Kenney v. Killian, 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956). ("A prosecuting attorney is a quasi-judicial officer and enjoys the same immunity from a civil action for damages as that which protects a judge acting within his jurisdiction over the parties and the subject matter of the litigation.").
 
 
 16
 We believe, however, that when a prosecuting attorney acts in some capacity other than his quasi-judicial capacity, then the reason for his immunity — integral relationship between his acts and the judicial process — ceases to exist. If he acts in the role of a policeman, then why should he not be liable, as is the policeman, if, in so acting, he has deprived the plaintiff of rights, privileges, or immunities secured by the Federal Constitution and laws? See Monroe v. Pape, supra, 365 U.S. at 187, 81 S.Ct. 473; see also Schneider v. Shepherd, 192 Mich. 82, 158 N.W. 182, L.R.A.1916F, 399 (1916), cited in Yaselli, 12 F.2d at 405. To us, it seems neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.
 
 
 17
 The prosecuting attorney may have numerous roles.[4] See Barrett, Police Practices and the Law — From Arrest to Charge, 50 Calif.L.Rev. 11, 16-24 (1962). The distinction between the roles may be significantly controlling, for as our court quite recently emphasized, "prosecutors are not immune from suit under the Act simply as a matter of status wholly without regard to the nature of their conduct." Corsican Productions v. Pitchess, 338 F.2d 441 (9th Cir. 1964). In that case we cited, with approval, Lewis v. Brautigam, 227 F.2d 124, 55 A.L.R.2d 505 (5th Cir. 1955). In the Lewis case, a state's attorney, an official prosecutor, was sued, not for acts done in the course of his quasi-judicial role, but rather for acts done in his investigative role. It was alleged that he attempted the coercion of a plea of guilty to a criminal charge. Two deputies, at his instigation and direction, surreptitiously removed the plaintiff, who had pleaded not guilty to an indictment for murder, from the county jail, where the plaintiff was in daily conference with his attorneys, to a state prison some 300 miles distant for the purpose of preventing such conferences and of intimidating and coercing the plaintiff into changing his plea. At the state prison the intimidation and coercion were inflicted by a deputy sheriff. In holding that the State's attorney was not immune, the court stated, "The complaint is further subject to the construction that the actions of the [deputies] in extorting a plea of guilty from the plaintiff by threats, intimidation, long questioning, and promises of reward, were committed pursuant to their prior conspiracy and agreement with the [state's attorney]. If the State's Attorney ordered and directed the officers to force the plaintiff to plead guilty, then certainly he is no less liable than are those who carried out his instructions. It would be wrong to hold the officers liable but the State's Attorney exempt. On motion to dismiss, it cannot be held that such acts were either within the scope of his jurisdiction as State's Attorney, or were authorized by law."
 
 
 18
 We agree with the reasoning of the Lewis case, and we must apply the principle here. The trial court must determine the nature of the acts alleged to have been wrongfully committed, for the appellees may have abandoned their "quasi-judicial" role. If they, so doing, committed acts, or authoritatively directed the commission of acts, which ordinarily are related to police activity as opposed to judicial activity, then the cloak of immunity should not protect them. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Haldane v. Chagnon, supra, 345 F.2d at 603; Corsican Productions v. Pitchess, supra, 338 F.2d at 442-443; York v. Story, supra, 324 F.2d at 453; Marshall v. Sawyer, 301 F.2d 639, 647 (9th Cir. 1962); Cohen v. Norris, 300 F.2d 24, 31 (9th Cir. 1962).
 
 
 19
 The title of office, quasi-judicial or even judicial, does not, of itself, immunize the officer from responsibility for unlawful acts which cannot be said to constitute an integral part of judicial process.
 
 
 20
 Reversed.
 
 
 
 Notes:
 
 
 [1]
 The wives of the two officials were also named as defendants. There is no allegation that either of them personally committed any act which might subject them to civil liability under Federal law. We infer that they were joinedpro forma because of some aspect of Arizona community property law which is not discussed in the briefs. The propriety of their joinder may be subsequently determined.
 
 
 [2]
 Insofar as his court appearances are required, it is provided by Arizona statute that the County Attorney shall "Attend the * * * courts * * * within the county, * * *" Ariz.Rev.Stat. Ann. § 11-532
 
 
 [3]
 Section 1988 of Title 42, U.S.C. provides:
 "The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty. R.S. § 722."
 
 
 [4]
 Ariz.Rev.Stat.Ann. § 11-532, which defines the duties of Arizona County Attorneys, does not expressly confer strictly investigative powers. It provides,
 "A. The county attorney is the public prosecutor of the county. He shall:
 
 
 [1]
 Attend the superior and other courts within the county, and conduct, on behalf of the state, all prosecutions for public offenses
 
 
 [2]
 Institute proceedings before magistrates for the arrest of persons charged with or reasonably suspected of public offenses when he has information that the offenses have been committed
 
 
 [3]
 When not engaged in criminal proceedings in the superior court, attend upon the magistrates in cases of arrest when required by them, and attend before, and give advice to, the grand jury
 
 
 [4]
 Draw indictments and informations, defend actions brought against the county, prosecute actions to recover recognizances forfeited in courts of record, and actions for recovery of debts, fines, penalties and forfeitures accruing to the state or county."