[No. 20049–6–I.  Division One.  September 8, 1987.]

ELIZABETH ANGELA COLLINS, *Individually and as Personal Representative*, ET AL, *Appellants*, v. KING COUNTY, ET AL, *Respondents*.

*William J. Bender, Linda B. Eide,* and *Skellenger &*

---

[2]Our decision in this case makes it unnecessary for us to address the remaining theories advanced by the sheriff.

*Bender,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *C. Craig Parker, Deputy,* for respondents King County, et al.

*Kirk R. Wines, City Attorney,* for respondents Medina, et al.

*Carol Moody* and *Karr, Tuttle, Koch, Campbell, Mawer & Morrow,* for respondent Zibung–Huffman.

*Rick Bathum,* for respondent Resources Northwest.

SCHOLFIELD, C.J.—Elizabeth, Domini, Daniel, Brian, Sean, and Maureen Collins (the Collins) appeal the trial court's dismissal of their lawsuit against the King County Prosecuting Attorney, several deputy prosecutors and the former assistant director of the prosecutor's Victim Assistance Unit. We affirm.

## FACTS

A suit was filed on July 9, 1986 by the Collins against: King County; Norman Maleng, Prosecuting Attorney for King County; Nicole MacInnes and Kathy Goater, Deputy Prosecuting Attorneys; Diane Kahaumia, former director of the King County Prosecutor's Victim Assistance Unit; the City of Medina; Al Anglin, Medina Police Chief; Philip Conrad, a Medina police officer; Patricia Zibung–Huffman, a psychologist; and Resources Northwest, Zibung–Huffman's employer. The suit alleges causes of action for wrongful death, emotional distress, federal civil rights violations under 42 U.S.C. § 1983, state civil rights violations, and negligence, all arising from the death of Eleanor Collins, and the assault of three of the Collins children at the hands of Dennis Collins, their father and Eleanor's husband.

According to the complaint, in March 1984, Dennis assaulted Eleanor with a gun and threatened to kill her. After the assault, Dennis committed himself to the Veterans Administration Hospital at American Lake from March 3 to March 9, 1984. Eleanor notified the Medina police that

she had been assaulted and asked the police to arrest Dennis. The police did not arrest him at that time.

Eleanor then contacted the Victim Assistance Unit (VAU) of the King County Prosecutor's Office. Diane Kahaumia, the VAU assistant director, assured Eleanor that Dennis would be arrested or involuntarily committed. Eleanor relied on those assurances. Six days after his admission to American Lake, Dennis was released. The Medina police were notified, but did not arrest Dennis. On April 19, 1984, Dennis shot and killed Eleanor, shot and severely wounded his daughter, Domini, and assaulted Elizabeth and Brian, his daughter and son.

On August 6, 1986, the King County Prosecutor, his employees and the County moved to dismiss the Collins' complaint for failure to state a cause of action, pursuant to CR 12(b)(6). These defendants argued, *inter alia,* that prosecutorial immunity barred the lawsuit. On August 21, 1986, the trial court granted the motion, and dismissed the case with prejudice as to King County, the King County Prosecutor and his deputies and employees (hereinafter King County).

### STANDARD OF REVIEW

CR 12(b) reads in pertinent part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted . . .

A dismissal of an action under CR 12(b)(6) should not be upheld on appeal if any state of facts could be proved under the complaint which would entitle the plaintiff to relief. *Madison v. General Acceptance Corp.,* 26 Wn. App. 387, 612 P.2d 826 (1980). A hypothetical situation asserted by the complaining party, not part of the formal record, may be considered by a court in making its determination, including facts alleged for the first time on appellate

review. *Halvorson v. Dahl,* 89 Wn.2d 673, 574 P.2d 1190 (1978).

## PROSECUTORIAL IMMUNITY

Although the Collins acknowledge the existence of prosecutorial immunity, they claim that King County's conduct falls within a "police function" exception to that immunity. King County argues that the prosecutor and his employees have absolute immunity against civil suit and that the narrow "investigative function" exception to prosecutorial immunity does not apply here.

The Collins allege common law claims, state constitutional claims, and federal civil rights claims, pursuant to 42 U.S.C. § 1983.[1] Courts have analyzed the question of prosecutorial immunity, as to both common law claims and 42 U.S.C. § 1983 claims.

In *Anderson v. Manley,* 181 Wash. 327, 43 P.2d 39 (1935), an individual brought an action for malicious prosecution against a federal district attorney in state court. The *Anderson* court upheld the district attorney's claim of immunity, stating as follows:

> While it is true that a prosecuting attorney acting in a matter which is clearly outside of the duties of his office is personally liable to one injured by his acts, a prosecuting attorney . . . is not liable . . . if the matters acted on are among those generally committed by the law to the control or supervision of the office and are not palpably beyond authority of the office. The doctrine of exemption of judicial and quasi-judicial officers—the prosecuting attorney comes within the second classification—is founded upon a sound public policy, not for the protection of the officers, but for the protection of the public and to insure active and independent action of the offi-

---

[1]42 U.S.C. § 1983 reads as follows:

"[Civil action for deprivation of rights.] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

cers charged with the prosecution of crime, for the protection of life and property.

*Anderson,* at 331.

In *Creelman v. Svenning,* 67 Wn.2d 882, 410 P.2d 606 (1966), an individual brought an action against a deputy prosecuting attorney and the state and county for malicious prosecution, following the dismissal of a criminal trespass action against him. In upholding the dismissal of the action, the court noted that the prosecutor, acting in a quasi-judicial capacity, is, as a matter of public policy, immune for acts done in his official capacity. *Creelman,* at 884. *See also Loveridge v. Schillberg,* 17 Wn. App. 96, 561 P.2d 1107 (1977).

A similar analysis has been applied to section 1983 claims. In *Imbler v. Pachtman,* 424 U.S. 409, 47 L. Ed. 2d 128, 96 S. Ct. 984 (1976), the issue before the Court was whether a state prosecuting attorney who initiated and pursued a criminal prosecution was amenable to suit under 42 U.S.C. § 1983, for alleged deprivations of the defendant's constitutional rights. The Court noted that the issue had been considered by the courts of appeals on numerous occasions, and that the circuits were virtually unanimous that the prosecutor enjoys absolute immunity from a section 1983 claim, when he acts within the scope of his prosecutorial duties. *Imbler,* at 420.

The Court went on to note that common law immunity of the prosecutor is well settled, based on the public policy considerations that harassment by unfounded litigation would cause the prosecutor to shade his decisions instead of exercising independent judgment. *Imbler,* at 421. The *Imbler* Court then determined that prosecutorial immunity applied to section 1983 claims, as well as to common law claims, thereby approving the decisions of the majority of the circuits below. *Imbler,* at 424–25. The *Imbler* Court went on to state that the initiation of a prosecution is clearly associated with the judicial phase of the criminal process, but the Court commented that if a prosecutor were to engage in an investigative function, his immunity might

be more limited. *Imbler,* at 430.

Conversely, in *Robichaud v. Ronan,* 351 F.2d 533 (9th Cir. 1965), the Court of Appeals declined to uphold a prosecutor's claim of immunity from suit. In an action against a county attorney under 42 U.S.C. § 1983, a juvenile alleged she had been charged with murder in the first degree without probable cause, been harassed in jail, and been held without bail by the prosecutor or at his direction. The prosecuting attorney argued that he was immune from suit. The *Robichaud* court acknowledged that a prosecuting attorney has been held to be immune from liability for damages under 42 U.S.C. § 1983.

The court went on to state, however, that when a prosecuting attorney acts in some capacity other than his quasi–judicial capacity, then the integral relationship between his acts and the judicial process ceases to exist. The court stated:

> If [the prosecutor] acts in the role of a policeman, then why should he not be liable, as is the policeman, if, in so acting, he has deprived the plaintiff of rights, privileges, or immunities secured by the Federal Constitution and laws?

*Robichaud,* at 536. Thus, the court held the nature of the acts complained of must be determined, and if they are acts ordinarily related to police activity, then they should not be protected by prosecutorial immunity:

> The title of office, quasi–judicial or even judicial, does not, of itself, immunize the officer from responsibility for unlawful acts which cannot be said to constitute an integral part of judicial process.

*Robichaud,* at 537–38.

In *Miller v. Curry,* 625 S.W.2d 84 (Tex. Ct. App. 1981), a section 1983 action against the district attorney was brought on behalf of surviving children of two deceased women who had been shot to death by their estranged husbands, alleging failure to take action on decedents' requests for protection from the violent acts of the estranged husbands. Apparently, the prosecutor specifically refused to

protect the women. Applying the analysis developed in *Robichaud,* the court determined that the doctrine of absolute immunity applied. *Miller,* at 87. The *Miller* court determined that there was no distinction between other immunity cases complaining about inappropriate action taken by the prosecutor in performance of his normal duties and the complaint before it, which alleged damages resulting from the prosecutor's inaction.

Until recently, the Ninth Circuit Court of Appeals has taken a rather narrow view of what acts of a judge and prosecutor are judicial in nature, giving rise to immunity. *See Robichaud v. Ronan, supra; Rankin v. Howard,* 633 F.2d 844 (9th Cir. 1980) (judge's private prior agreement to decide in favor of one party was not a judicial act giving rise to judicial immunity); *Beard v. Udall,* 648 F.2d 1264 (9th Cir. 1981) (conspiracy between state judge and prosecutor to incarcerate an individual held nonjudicial and thus not immunized).

However, in *Ashelman v. Pope,* 793 F.2d 1072 (9th Cir. 1986), the Court of Appeals concluded that its prior decisions construed the immunity doctrine too narrowly by focusing on the underlying actions instead of looking to the ultimate acts. The court stated that policy considerations favor a liberal application of immunity, and that despite improper conduct which may be present, judges and prosecutors are absolutely immune for judicial or quasi–judicial activities within the scope of their authority. *Ashelman,* at 1078.

█ The Collins argue that Kahaumia assumed a "police function" by assuring Eleanor that Dennis would be arrested, but we find this is not a reasonable inference to be drawn here. Even if we were convinced that the police function exception to judicial immunity existed, the Collins present no evidence that Kahaumia promised to personally apprehend Dennis or in any other way assume a police activity. It would appear that she merely told Eleanor that he would be arrested (*i.e.,* that an arrest warrant would be issued). This court cannot say that such a statement is out-

side the prosecutor's normal functions. The charging function is so intimately related to the judicial process that prosecutorial immunity must apply.

In addition, the Collins argue that because Kahaumia was not an attorney and because she worked in the VAU, rather than in a more traditional department within the prosecuting attorney's office, prosecutorial immunity does not apply.

The absolute immunity enjoyed by prosecuting attorneys also applies to the government entity under which they work and to the workers whom they employ. In *Creelman v. Svenning, supra,* the court held that the public policy that requires immunity for individual prosecutors also requires immunity for the county and the state. If it were otherwise, the objectives for granting immunity would be destroyed because the prosecutor would need to be concerned with potential tort litigation involving the county and state each time he made a prosecutorial decision. *Creelman,* 67 Wn.2d at 885. This same public policy rationale applies to employees. The extension of immunity also applies to section 1983 claims, so long as the actions appear to be within the scope of prosecutorial duties. *See Keating v. Martin,* 638 F.2d 1121 (8th Cir. 1980).

With respect to the argument that the VAU is not a traditional prosecutorial function, RCW 7.68.035 reads in pertinent part:

[E]ach county shall continue to provide for such comprehensive programs. A program shall be considered "comprehensive" only after approval of the department upon application by the county prosecuting attorney. The department shall approve as comprehensive only programs which:

(a) Provide comprehensive services to victims and witnesses of all types of crime with particular emphasis on serious crimes against persons and property. . . .

(b) Are administered by the county prosecuting attorney either directly through the prosecuting attorney's office or by contract between the county and agencies providing services to victims of crime;

Former RCW 7.68.035(4). Thus, responsibilities for the establishment and implementation of the VAU have been placed with the prosecuting attorney. Therefore, Kahaumia was carrying out a mandated function of the prosecuting attorney. It follows that the nature of her acts were quasi–judicial. We hold that the trial court properly dismissed the Collins' action on a CR 12(b)(6) motion.

## PUBLIC POLICY

The Collins argue that because the purpose of prosecutorial immunity is protection of the public, that purpose will not be served here if the prosecutor is immune from suit. In addition, the Collins argue that domestic violence legislation requiring the prosecutor to provide certain protections to victims can be circumvented if prosecutors are immune from suit for failure to carry out legislatively mandated procedures regarding victim notification.

King County argues that public policy requires an affirmance of the dismissal because of the unlimited liability exposure to the government should an individual be able to base a suit on a prosecutor's filing decision. King County cites *Hartley v. State,* 103 Wn.2d 768, 698 P.2d 77 (1985), in which a governmental body's failure to revoke a habitual traffic offender's license under RCW 46.65 did not render it liable for injuries caused by the offender's subsequent negligent driving. The court stated as follows:

> Public policy considerations also dictate against liability in this case. The government would be open to unlimited liability were we to hold potentially liable every decision by a prosecutor or the DOL to delay proceedings.

*Hartley,* at 785.

As the Collins correctly note, protection of the public is the primary reason for prosecutorial immunity. This sometimes means, however, that the public's need for an independent prosecutor must outweigh the concern over individual wrongs, and leave redress for those grievances to the ballot box. The public policy of allowing the prosecutor the freedom to charge or not to charge must be upheld to

ensure the independence of that decisionmaking process. Thus, the Collins' public policy arguments must fail.

King County raises additional issues concerning the sufficiency of the Collins' complaint to establish liability against a municipality and concerning the sufficiency of the complaint with respect to proximate cause. Because we affirm, we need not address these issues in this opinion.

Judgment affirmed.

GROSSE and PEKELIS, JJ., concur.