[No. 44716-5-I.  Division One.  July 17, 2000.]

MARIA LAURA MUSSO-ESCUDE, *Appellant*, v. LAWRENCE EDWARDS, ET AL., *Respondents*.

*Franklin W. Shoichet*, for appellant.

*Anne M. Bremmer, Scott D. Bissell*, and *Blake E. Dias* (of *Stafford Frey Cooper*), for respondents.

BAKER, J. — Maria Laura Musso-Escude appeals the summary judgment dismissal of her claims against Lawrance Edwards, an attorney who prosecuted criminal charges against her on behalf of the City of Bothell. We affirm the dismissal of her 42 U.S.C. § 1983 claim because Musso-Escude has not shown an infringement of her civil rights. We affirm the dismissal of her state law abuse of process claim because Edwards was acting within the scope of his duties when he offered to dismiss criminal charges against Musso-Escude in return for a release of potential

civil claims, and because he is absolutely immune for performing that prosecutorial function.

## I

A moving party is entitled to summary judgment when there is no genuine issue as to any material fact, as demonstrated by the pleadings, affidavits, depositions, and admissions on file.[1] Reasonable inferences from the evidence are resolved against the moving party.[2] Summary judgment motions should be granted only if a reasonable person could reach but one conclusion from all the evidence.[3] Appellate courts reviewing summary judgments engage in the same inquiry as the trial court ( i.e., de novo).[4] Where a cause of action under 42 U.S.C. § 1983 is dismissed on summary judgment based upon a claim of immunity, an appellate court assumes that all of the facts alleged in the plaintiff's complaint are true.[5] The facts here are set forth accordingly.

## II

Bothell is a noncharter code city subject to the optional municipal code provisions of Title 35A RCW.[6] Under RCW 35A.11.020, the city is authorized to adopt and enforce ordinances, and may impose penalties for the violation of such ordinances constituting a misdemeanor or gross misdemeanor.

RCW 35A.13.090 requires the city to obtain legal counsel, either by appointment of a city attorney on a full-time or part-time basis, or by any reasonable contractual arrange-

---

[1] CR 56(c); *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

[2] *Folsom*, 135 Wn.2d at 663.

[3] *Folsom*, 135 Wn.2d at 663.

[4] *Folsom*, 135 Wn.2d at 663.

[5] *Staats v. Brown*, 139 Wn.2d 757, 763, 991 P.2d 615 (2000); *Kalina v. Fletcher*, 522 U.S. 118, 122, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997).

[6] BOTHELL MUNICIPAL CODE (BMC) 1.08.010.

ment for such professional services. The function of "city attorney" was contractually arranged for with a Seattle law firm.

The Bothell Municipal Code (BMC) does not provide for an office of "prosecuting attorney." Instead, the City contracted with Edwards to provide "all municipal court related prosecution legal services for the City." The contract provided that Edwards:

> shall make decisions involving, but not limited to, the charging of crimes, plea agreements, compromises, sentencing recommendations, review and revocation of probation, independently of the City, the Bothell Police Department, and the Chief of Police. These decisions shall be within the exclusive jurisdiction of [Edwards] and be made in accordance with accepted prosecutor ethics, cannons, and current practices.

The contract further provided that Edwards would obtain his own liability insurance, he would indemnify Bothell for any claims or losses arising out of his performance of the contract, and his status was that of an "independent contractor." As an independent contractor, Edwards was not afforded sick leave, vacation time, or additional pay for overtime applicable to city employees, and the city was not responsible for payment of his social security taxes or income tax withholding. If Edwards was not available to perform his duties under the contract, such as when he was on vacation, he was required to associate (at his expense) another attorney to perform the services required under the contract.

Musso-Escude was arrested for obstruction of justice contrary to BMC 9.60.10 because she purportedly tried to enter her house after being told not to do so by a Bothell police officer who had followed her home after observing her speeding. Musso-Escude allegedly struggled with the officer after he grabbed her arms. The officer arrested Musso-Escude and took her to the police station.

Edwards offered to dismiss the obstruction charge against Musso-Escude in exchange for her release of poten-

tial civil claims in connection with the arrest. In the course of discovery during the instant case, Bothell admitted that Edwards had "sole authority regarding plea negotiations," but denied his authority to negotiate civil actions. Bothell also admitted that Edwards did not obtain specific permission from its officials to negotiate such a release.

After Musso-Escude rejected the release-dismissal offer, Edwards added two additional charges: resisting arrest contrary to BMC 9.60.020 and negligent driving contrary to BMC 10.10.010.[7] The charges went to trial and, after Edwards presented the case-in-chief, Musso-Escude moved for a dismissal. That motion was denied (as was a pretrial *Knapstad*[8] motion Musso-Escude had made).

A jury acquitted Musso-Escude of all three charges. Musso-Escude then filed this suit against Bothell, the police officer that had arrested her, and Edwards. She pleaded causes of action under state law for malicious prosecution, abuse of process, and emotional distress, and further claimed a violation of her civil rights under 42 U.S.C. § 1983. Edwards moved for summary judgment, contending that he was absolutely immune from suit or, alternatively, that Musso-Escude's suit should be dismissed because he was either qualifiedly immune or the claims failed as a matter of law. The trial court concluded that Edwards was absolutely immune from suit and dismissed all claims against him. The claims against the other defendants were settled.

On appeal, Musso-Escude argues that the trial court erred in dismissing her state law claim of abuse of process and her claim under 42 U.S.C. § 1983.

---

[7] Edwards disputes that he added these two additional charges after he made the release-dismissal offer. As noted above, we view the disputed facts in the light most favorable to the nonmoving party upon review of a summary judgment motion.

[8] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986). Such motions request that a trial court dismiss criminal charges for insufficiency of evidence, assuming that the prosecution's version of facts in the case are true for purposes of the motion. *See generally Knapstad*, 107 Wn.2d at 356-57.

## III

42 U.S.C. § 1983 is a codification of section 1 of the Civil Rights Act of 1871.[9] The statute provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .[10]

██ ██ Where a cause of action is brought under this statute, the first inquiry is necessarily "whether the plaintiff has alleged the deprivation of an actual constitutional right at all."[11] The United States Supreme Court has found in the First Amendment a constitutional basis for the right of access to the courts, as that access is an aspect of the right of petition.[12] The constitutional right of access to the courts is a well-established facilitative right " 'designed to ensure that a citizen has the opportunity to exercise his or her legal rights to present a cognizable claim to the appropriate court and, if that claim is meritorious, to have the court make a determination to that effect and order the appropriate relief.' "[13] "The right of access to the courts is implicated 'where the ability to file suit was delayed, or blocked altogether.' "[14]

---

[9] *See Briscoe v. LaHue*, 460 U.S. 325, 337, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983).

[10] 42 U.S.C. § 1983.

[11] *Conn v. Gabbert*, 526 U.S. 286, 290, 119 S. Ct. 1292, 143 L. Ed. 2d 399 (1999).

[12] *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972).

[13] *Foster v. City of Lake Jackson*, 28 F.3d 425, 430 (5th Cir. 1994) (quoting *Crowder v. Sinyard*, 884 F.2d 804, 814 (5th Cir. 1989), *cert. denied*, 496 U.S. 924, 110 S. Ct. 2617, 110 L. Ed. 2d 638 (1990)); *Ryland v. Shapiro*, 708 F.2d 967, 971 (5th Cir. 1983).

[14] *Venable v. Keever*, 61 F. Supp. 2d 552, 560 (N.D. Tex. 1999) (quoting *Foster*, 28 F.3d at 430 (noting a requirement of demonstrating prejudice to the right to

Edwards contends that Musso-Escude has not shown a violation of a constitutional right with respect to her claim under 42 U.S.C. § 1983. We agree. Musso-Escude made a bare allegation that Edwards infringed her constitutional right of access to the courts by demanding a release from civil liability and by adding additional charges after that demand was rebuffed. She has not argued how her right of access to the courts or her ability to file suit was delayed, blocked, or implicated by the proffered agreement that she did not sign,[15] and no impairment of her rights is clearly set forth in her complaint or her opposition to Edwards' summary judgment motion. Musso-Escude's claim under 42 U.S.C. § 1983 fails as a matter of law.[16]

## IV

Edwards claims that he is entitled to absolute immunity from Musso-Escude's state tort claims, citing *Dang v. Ehredt*[17] A review of *Dang*, and other Washington cases decided upon the basis of absolute prosecutorial immunity, indicates that our state courts follow federal constructs of such immunity.[18] Analysis of a prosecutor's absolute immu-

---

access)); *accord Ryland*, 708 F.2d at 973 (conduct by state officers which results in a delay in the prosecution of an action in state court may prejudice the right to access).

[15] Musso-Escude unquestionably filed this case, and has not alleged that she was delayed by even one minute due to Edwards' actions.

[16] *See Venable v. Keever*, 61 F. Supp. 2d at 560.

[17] 95 Wn. App. 670, 977 P.2d 29, *review denied*, 139 Wn.2d 1012 (1999).

[18] The seminal case setting forth the construct of prosecutorial immunity in Washington is *Anderson v. Manley*, 181 Wash. 327, 43 P.2d 39 (1935), which approved the federal construct set forth in *Yaselli v. Goff*, 12 F.2d 396 (2d Cir. 1926). Subsequent cases cite only *Anderson, Yaselli*, federal cases subsequent to *Yaselli* that relied upon its holding (*see Imbler v. Pachtman*, 424 U.S. 409, 422, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)), or cases based upon one of the foregoing. *See Mitchelle v. Steele*, 39 Wn.2d 473, 474, 236 P.2d 349 (1951) (following *Anderson*, 181 Wash. 327); *Creelman v. Svenning*, 67 Wn.2d 882, 884, 410 P.2d 606 (1966) (following *Mitchelle*, 39 Wn.2d 473, *Anderson*, 181 Wash. 327, and *Yaselli*, 12 F.2d 396); *Kuchenreuther v. Whatcom County*, 24 Wn. App. 716, 717-18, 604 P.2d 499 (1979) (following *Imbler*, 424 U.S. at 422-24); *Filan v. Martin*, 38 Wn. App. 91, 96, 684 P.2d 769 (1984) (following *Imbler*, 424 U.S. at 422-23); *Coffel v. Clallam County*, 47 Wn. App. 397, 402, 735 P.2d 686 (1987) (following *Creelman*, 67 Wn.2d

nity from suit under state law claims tracks common law immunity analysis under 42 U.S.C. § 1983.[19]

■■■ Common law immunity is usually afforded to government officials for public policy reasons, including the injustice of finding liability against an official who is charged by law to exercise discretion and a concern that the threat of liability would damper an official's desire to perform his or her duties zealously.[20] Two types of common law immunity are recognized, qualified and absolute.[21] Absolute immunity protects an official from suit for any act done in the course of performing his or her duties, and serves as a shield from liability even where willful misconduct is alleged.[22] Qualified immunity protects an official only for those acts done in good faith.[23] In general, executive branch officials are afforded qualified immunity.[24]

---

882); *Collins v. King County*, 49 Wn. App. 264, 268-69, 742 P.2d 185 (1987) (following *Imbler*, 424 U.S. 409 and *Robichaud v. Ronan*, 351 F.2d 533 (9th Cir. 1965)); *Babcock v. State*, 116 Wn.2d 596, 608, 809 P.2d 143 (1991) (following, in dicta, *Imbler*, 424 U.S. at 429)); *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 105-09, 829 P.2d 746 (1992) (following *Butz v. Economou*, 438 U.S. 478, 506, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978)); *Gilliam v. Department of Soc. & Health Servs.*, 89 Wn. App. 569, 582, 950 P.2d 20, *review denied*, 135 Wn.2d 1015 (1998) (following *Butz*, 438 U.S. 478, *Creelman*, 67 Wn.2d 882, *Kalina v. Fletcher*, 522 U.S. 118, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997)); *Tanner v. City of Fed. Way*, 100 Wn. App. 1, 4, 997 P.2d 932 (2000) (following *Imbler*, 424 U.S. at 427).

[19] *See Kuchenreuther*, 24 Wn. App. at 717; *Collins*, 49 Wn. App. at 267-69; *Altshuler v. City of Seattle*, 63 Wn. App. 389, 819 P.2d 393 (1991), *review denied* 118 Wn.2d 1023 (1992); *see Briscoe*, 460 U.S. at 330 (in interpreting 42 U.S.C. § 1983, the United States Supreme Court has concluded that Congress intended the statute to be construed in the light of common law immunity principles). However, *Staats v. Brown*, 139 Wn.2d at 778-79, notes that state and federal law diverge insofar as qualified immunity of arresting officers is implicated. Arresting officers are afforded a sui generis qualified immunity that is apparently inapplicable here because it protects arresting officers from claims of false arrest and imprisonment while performing statutory duties according to procedures dictated by their superiors and by statute. *Staats*, 139 Wn.2d at 778.

[20] Donna S. Spurlock, Note, *Liability of State Officials and Prison Corporations for Excessive Use of Force Against Inmates of Private Prisons*, 40 VAND. L. REV. 983, 1007 (1987).

[21] *Spurlock*, 40 VAND. L. REV. at 1007.

[22] *Gilliam*, 89 Wn. App. at 578.

[23] *Spurlock*, 40 VAND. L. REV. at 1007.

[24] Barbara E. Armacost, *Qualified Immunity: Ignorance Excused*, 51 VAND. L.

Where a state actor claims immunity against a cause of action under 42 U.S.C. § 1983, they must first show a common law basis for that privilege.[25] As stated by the Court in *Buckley v. Fitzsimmons*:[26]

> We do not have a license to establish immunities from § 1983 actions in the interests of what we judge to be sound public policy. When [a] prosecutorial function is not within the advocate's role and there is no historical tradition of immunity on which we can draw, our inquiry is at an end.[27]

In *Imbler v. Pachtman*, a former prisoner whose conviction had been set aside in collateral proceedings sought damages under 42 U.S.C. § 1983 against the prosecutor who had tried the charges against him.[28] *Imbler* set forth a framework which examined common law precedent as well as the policy considerations underlying that precedent, including the interest in protecting prosecutors from harassing litigation that would divert time and attention from official duties and the interest of enabling prosecutors to exercise independent judgment when "deciding which suits to bring and in conducting them in court."[29] The former interest lends support to immunity from all litigation against a prosecutor, whereas the latter is applicable only

---

Rev. 583, 616-19 (1998). Under the doctrine of qualified immunity, government officials who perform discretionary functions are usually shielded from liability for civil damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

[25] *Malley v. Briggs*, 475 U.S. 335, 339-40, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986) (citing *Tower v. Glover*, 467 U.S. 914, 104 S. Ct. 2820, 81 L. Ed. 2d 758 (1984)).

[26] 509 U.S. 259, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993).

[27] *Buckley*, 509 U.S. at 278 (internal citations and quotation marks omitted). Where "an official was accorded immunity from tort actions at common law when the Civil Rights Act was enacted in 1871, the Court next considers whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions." *Tower*, 467 U.S. at 920. In other words, the courts look to the common law for guidance, but do not assume that Congress intended to incorporate every historical common law immunity into 42 U.S.C. § 1983 in unaltered form. *Malley*, 475 U.S. at 340.

[28] *Imbler v. Pachtman*, 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976).

[29] *Imbler v. Pachtman*, 424 U.S. at 424.

when the prosecutor is performing functions that require the exercise of prosecutorial discretion.[30] Based on both historical precedent and the aforementioned policy considerations, the Court concluded that "a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution" is absolutely immune from suit.[31]

The parties here do not dispute the basic premise that a state prosecuting attorney is absolutely immune from suit for actions taken within the scope of his or her duties in initiating and pursuing a criminal prosecution. But Musso-Escude argues that Edwards cannot be classified as a state prosecuting attorney given the facts of this case. An analysis of federal precedent resolves the dispute in Edwards' favor.

We first note that the Court in *Imbler* refused to address "immunity for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate."[32] Subsequent cases have made it clear that it is the interest in protecting the proper functioning of the office, rather than the interest in protecting its occupant, that is of primary importance.[33] For example, the Court in *Burns v. Reed*[34] held that a prosecutor's appearance in court in support of an application for a search warrant and the presentation of evidence at such a hearing are protected by absolute immunity. However, the Court also held that the prosecutor's legal advice to the police concerning hypnosis as an investigatory technique was shielded only by qualified immunity because there is no historical or common law basis for immunity

---

[30] *See Kalina*, 522 U.S. at 125.

[31] *Imbler*, 424 U.S. at 410.

[32] *Imbler*, 424 U.S. at 430-31.

[33] *See Kalina*, 522 U.S. at 125.

[34] 500 U.S. 478, 492, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991).

where a prosecutor provides legal advice to the police.[35] Similarly, the Court in *Buckley* held that qualified immunity applied to statements made by a prosecutor during a press conference, including allegedly false and prejudicial claims of evidence linking a defendant to a "murderous burglary ring" because there existed no common law immunity for a prosecutor's out-of-court statements to the press.[36]

The Court in *Kalina v. Fletcher* followed the *Imbler* framework when presented with the question of whether a King County Prosecutor was absolutely or qualifiedly immune in vouching for the facts in a "Certification for Determination of Probable Cause."[37] The *Kalina* Court first noted its earlier decision in *Malley v. Biggs* that rejected two theories on which immunity might have been accorded to a police officer who had presented a judge with a complaint and supporting affidavit that failed to establish probable cause.[38] The officer's first argument, that his function was comparable to that of a complaining witness, was rejected because complaining witnesses were not absolutely immune at common law.[39] The officer's second argument rested on the similarity between his conduct and the functions often performed by prosecutors.[40] The *Malley* Court had stated and rejected the officer's argument as follows:

> As an alternative ground for claiming absolute immunity, petitioner draws an analogy between an officer requesting a

[35] *Burns*, 500 U.S. at 482, 492-96.

[36] *Buckley*, 509 U.S. at 276-78.

[37] *Kalina v. Fletcher*, 522 U.S. 118, 121-22, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997).

[38] *Kalina*, 522 U.S. at 127; *Malley v. Briggs*, 475 U.S. 335, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).

[39] *Kalina*, 522 U.S. at 127 (citing *Malley* 475 U.S. at 340-41). Under the common law, one who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without probable cause. *Kalina*, 522 U.S. at 127.

[40] *Kalina*, 522 U.S. at 128 (citing *Malley* 475 U.S. at 341-43).

warrant and a prosecutor who asks a grand jury to indict a suspect. Like the prosecutor, petitioner argues, the officer must exercise a discretionary judgment based on the evidence before him, and like the prosecutor, the officer may not exercise his best judgment if the threat of retaliatory lawsuits hangs over him. Thus, petitioner urges us to read § 1983 as giving the officer the same absolute immunity enjoyed by the prosecutor.

. . . .

. . . We intend no disrespect to the officer applying for a warrant by observing that his action, while a vital part of the administration of criminal justice, is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment. Furthermore, petitioner's analogy, while it has some force, does not take account of the fact that the prosecutor's act in seeking an indictment is but the first step in the process of seeking a conviction. Exposing the prosecutor to liability for the initial phase of his prosecutorial work could interfere with his exercise of independent judgment at every phase of his work, since the prosecutor might come to see later decisions in terms of their effect on his potential liability. Thus, we shield the prosecutor seeking an indictment because any lesser immunity could impair the performance of a central actor in the judicial process.[41]

Turning to the facts in *Kalina*, the Court framed the relevant inquiry as "whether [the prosecutor] was acting as a complaining witness rather than a lawyer when she executed the certification under penalty of perjury."[42] The Court noted that Washington law requires that an arrest warrant be supported by either an affidavit or sworn testimony establishing the grounds for issuing the warrant, and that a "Certification for Determination of Probable Cause" is designed to satisfy those requirements.[43] The Court rejected the prosecutor's argument that vouching for the facts is the work of an advocate and integral to the initiation of the prosecution because it is not necessary for

---

[41] *Malley v. Briggs*, 475 U.S. 341-43 (internal citations and quotation marks omitted).

[42] *Kalina*, 522 U.S. at 129 (internal quotation marks omitted).

[43] *Kalina*, 522 U.S. at 129.

a prosecutor to sign the certification under penalty of perjury and because, in doing so, a prosecutor performs an act that any competent witness can perform.[44] The Court also rejected the prosecutor's argument that denying absolute immunity would have a "chilling effect" on a prosecutor's administration of justice because prosecutors in Washington outside of King County do not attest to the facts in "Certification[s] for Determination of Probable Cause."[45] In a concurring opinion, Justice Scalia was careful to point out that Kalina would still be absolutely immune from any suit challenging her decision to prosecute or seek an arrest warrant, but only qualifiedly immune if she changes "functional categories" by providing personal testimony to the Court.[46]

While the absolute immunity protecting the prosecutor's role as an advocate is warranted because any lesser degree of immunity could impair the judicial process itself, it is not grounded in any special "esteem for those who perform these functions, and certainly not from a desire to shield abuses of office."[47] Thus, in determining immunity, a court examines "the nature of the function performed, not the identity of the actor who performed it."[48] For example, the Attorney General of the United States is protected by qualified immunity when engaged in the performance of national defense functions rather than prosecutorial functions.[49] Similarly, a prosecutor has no immunity for acting outside the scope of his or her duties, such as extorting sexual favors or requiring an accused to swear on a Bible before dismissing criminal charges.[50]

---

[44] *Kalina,* 522 U.S. at 129-31.

[45] *Kalina,* 522 U.S. at 131.

[46] *Kalina,* 522 U.S. at 135.

[47] *Malley,* 475 U.S. at 342.

[48] *Forrester v. White,* 484 U.S. 219, 229, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988).

[49] *See Mitchell v. Forsyth,* 472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

[50] *See Doe v. Phillips,* 81 F.3d 1204, 1210 (2d Cir. 1996); *Schloss v. Bouse,* 876 F.2d 287, 291 (2d Cir. 1989).

██ We note that under federal precedent, the functions performed by prosecutors ordinarily include the decision to institute a criminal prosecution as well as the authority to negotiate release-dismissal agreements and to maintain a prosecution if such an agreement is rebuffed.[51] We see no reason why we should depart from that precedent, and conclude that the nature of the functions performed here are those which a prosecutor would ordinarily perform within the scope of his or her duties in initiating and pursuing a criminal prosecution. The reasoning of the Court in *Kalina* as well as the reasoning in the other cases discussed above lead us to conclude that Edwards was a prosecuting attorney acting within the scope of his duties as an advocate initiating and pursuing a criminal prosecution, and that he is thus absolutely immune from suit.[52]

In reaching that conclusion, we reject Musso-Escude's contention that Edwards is not immune because he was "acting outside the scope of his duties" in attempting to obtain a release of her civil claim and bringing additional criminal charges "in retaliation" for her rejection of the release-dismissal agreement.[53]

The steps taken by Edwards are intrinsically within the scope of a prosecutor's duties in initiating and pursuing a criminal prosecution. It is of no moment that Edwards' services were furnished pursuant to a contract. The contract did not require him to obtain specific authorization to negotiate a release from Musso-Escude, nor did it prevent him from doing so. To the contrary, the contract allowed Edwards to enter "compromises." The failed attempt to

---

[51] *McGruder v. Necaise*, 733 F.2d 1146, 1148 (5th Cir. 1984) (prosecutor's decision to maintain criminal prosecution after unsuccessfully attempting to obtain a release from civil liability, while reprehensible, is still within the scope of prosecutorial immunity protected by *Imbler*).

[52] *Imbler*, 424 U.S. at 410.

[53] Retaliatory prosecution is an actionable form of malicious prosecution or abuse of process. *See Haynesworth v. Miller*, 820 F.2d 1245 (D.C. Cir. 1987); *Magnotti v. Kuntz*, 918 F.2d 364 (2d Cir. 1990); *Mozzochi v. Borden*, 959 F.2d 1174 (2d Cir. 1992); *Coughlen v. Coots*, 5 F.3d 970 (6th Cir. 1993); *Moore v. Valder*, 65 F.3d 189 (D.C. Cir. 1995); *Connell v. Signoracci*, 153 F.3d 74 (2d Cir. 1998); *Burke v. Johnson*, 167 F.3d 276 (6th Cir. 1999).

obtain a compromise here was an act within the scope of his duties. The addition of criminal charges thereafter was also an act within the scope of his duties. Because Edwards is absolutely immune for such acts, we affirm the dismissal of Musso-Escude's state law abuse of process claim.

V

Because Musso-Escude has failed to explain how her civil rights were infringed for purposes of an action under 42 U.S.C. § 1983, we affirm dismissal of her claim under that statute. Because Edwards was acting within the scope of his duties when he attempted to obtain Musso-Escude's release of potential civil claims, we affirm dismissal of the state law abuse of process claim.

Affirmed.

BECKER, A.C.J., and COLEMAN, J., concur.